Gregory THOMPSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–01–00911–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 7, 2002.

James R. Walker, Houston, for Appellant.

Carmen Castillo Mitchell, Asstistant District Attorney, Houston, for Appellee.

Panel consists of Justices HEDGES, JENNINGS, and PRICE.*

## OPINION

TERRY JENNINGS, Justice.

A jury found appellant, Gregory Thompson, guilty of third degree felony theft of property worth more than $20,000, but less than $100,000, and assessed punishment at 10 years confinement and a $10,000 fine. In five points of error, appellant argues that the evidence was legally and factually insufficient to support his conviction, the trial court erred in denying his motion for a mistrial based on improper jury argument by the State at the punishment phase of trial, and he received ineffective assistance of counsel at the punishment phase of trial when his trial counsel failed to request the trial court to instruct the jury to disregard the State's improper jury argument.

We affirm appellant's conviction but reverse and remand for a new punishment hearing.

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

## Facts and Procedural Background

At trial, Lawrence Gunnels, the owner of Gunnels Used Cars, testified that he is a licensed wholesale automobile dealer and operates his business in Harris County. In the summer of 1998, appellant[1] was acting as an agent of Gunnels with permission to use Gunnels's dealer license number to buy and sell vehicles. On July 24, 1998, Gunnels's bank was presented with a sight draft in the amount of $26,800 for a 1997 Chevrolet Suburban purchased by appellant from another dealership. Gunnels explained that, generally, when one of his agents buys a vehicle from another dealer using a sight draft, Gunnels's bank pays the seller and Gunnels then seeks reimbursement from his agent. Here, appellant signed the sight draft, which was then paid by Gunnels's bank. On August 4, 1998, appellant presented Gunnels's dealership with a personal check for $26,800. Appellant was given the Suburban and the title. Approximately three days later, appellant's bank notified Gunnels that appellant's account was closed and the check would not be honored. Gunnels tried to contact appellant regarding the check but was initially unsuccessful. Gunnels testified that appellant later told him he was trying to sell some property and would "make good" on the check, but he never reimbursed Gunnels. Gunnels subsequently filed charges against appellant.

Harris County Assistant District Attorney John Boone, Chief of the Check Fraud Division, testified that he reviewed records of appellant's bank account, which were admitted into evidence. His review of those records indicated appellant's account had been opened in April of 1998 and was closed on May 19, 1998, more than two

1. Gunnels testified he knew appellant as "Creg Thompson."

months before appellant wrote the check at issue. Appellant's bank records reflected a maximum account balance of $1,025. Boone further testified that, in October of 1998, his office sent two demand letters to appellant by certified mail, return receipt requested. At least one of those letters was received and signed for by appellant.

Texas Department of Public Safety Sergeant Keith Kucifer, of the motor vehicle division, reviewed the title history of the vehicle in question and testified that those records indicated appellant sold the Suburban to Grant U. Hardeway, Sr.[2] on August 7, 1998 for $2,000. Sergeant Kucifer also testified that, based on his investigation of this matter, he determined the address listed as appellant's address on the check at issue was actually the address of a restaurant and was not an address of property owned by appellant.

On December 27, 2000, Sergeant Kucifer received an anonymous tip regarding appellant's whereabouts. Kucifer went to the location, which was another car dealership, to arrest appellant based on an outstanding felony warrant. When Kucifer, accompanied by Houston Police Officer Derek Rice, attempted to arrest appellant, appellant shoved Kucifer and Rice aside and fled on foot through a vacant lot. Sergeant Kucifer and Officer Rice managed to apprehend appellant after a short chase, and Kucifer characterized appellant's resistance to the arrest as "extremely violent."

Yolanda Nuncio, a manager for Wells Fargo Bank, testified that she had located in their records a cashier's check dated August 7, 1998 drawn by Grant U. Hardeway and made payable to Gunnels Used Cars in the amount of $10,000. The cashier's check bore a notation with the same vehicle identification number (VIN) as the Suburban. However, Nuncio could not tell whether the cashier's check was ever cashed or deposited into an account and did not know whether the check was deposited into Gunnels's account.

Tonya Taylor, office manager for Gunnels Used Cars, testified that she searched the dealership's records and located a slip for a $10,000 deposit made close to the date shown on the face of the cashier's check, but their records did not indicate the source of the deposit or whether it was a deposit of a check to pay for a particular vehicle. Taylor testified that the dealership receives approximately 20 to 30 checks per day and never received any correspondence from appellant telling them to credit the cashier's check against his purchase of the vehicle in question. Taylor examined the cashier's check admitted into evidence and did not recognize any of the account numbers shown on the back of that check.

The jury found appellant guilty of theft of property worth more than $20,000, but less than $100,000. During closing argument at the punishment phase of trial, the State argued to the jury as follows:

> Ladies and gentlemen, there's something important that I cannot tell you about concerning why you should not give [appellant] anything less than ten years. There's a very important reason but legally I'm not allowed to tell you what it is but it is very important. Trust me on this. If you give [appellant] less than ten years, you will find out later what's going to happen.

2. Although not presented to the jury, the record on appeal shows that Grant U. Hardeway, Sr. initially appeared as counsel for appellant before the trial court granted his motion to withdraw, based on a "conflict of interest to the degree that makes effective assistance of counsel impossible."

Appellant's objection to this argument as "outside the record" was sustained. Appellant then moved for a mistrial, which was denied. The jury assessed the maximum punishment available—10 years confinement and a $10,000 fine.

### Sufficiency of the Evidence

In his third and fourth points of error, which we address first, appellant contends the evidence was legally insufficient to support his conviction for theft of property worth more than $20,000 because a subsequent payment of $10,000 showed he lacked the intent to deprive the owner of the full value of the property.

A person commits a third degree felony theft if, without the owner's consent, the person unlawfully appropriates property worth more than $20,000, but less than $100,000 with the intent to deprive the owner of the property. TEX. PEN.CODE ANN. § 31.03 (Vernon Supp.2002). It is prima facie evidence that an accused intended to permanently deprive the owner of the property at issue if the accused purchased the property with a check written on a closed account. TEX. PEN.CODE ANN. § 31.06(a) (Vernon Supp.2002); *Steele v. State*, 22 S.W.3d 550, 554–55 (Tex.App.-Fort Worth 2000, pet. ref'd).

■ A legal sufficiency challenge requires us to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *King v. State*, 29 S.W.3d 556, 563 (Tex.Crim.App.2000).

■ Here, appellant wrote a $26,800 check to Gunnels on a closed account to pay for the Suburban purchased by Gunnels, thus, creating a presumption that he intended to permanently deprive Gunnels of the property. TEX. PEN.CODE ANN. § 31.06; *see Steele*, 22 S.W.3d at 552. To rebut the presumption that appellant intended to deprive Gunnels of the full amount of $26,800, appellant attempted to show that the purchaser of the Suburban, Grant U. Hardeway, Sr., paid Gunnels $10,000 for the vehicle, by cashier's check, within three days of appellant's presentation of his bad check. Although Gunnels's office manager testified that a $10,000 deposit was made within a short time of the date on the face of the cashier's check, appellant presented no evidence that Gunnels ever received, cashed, or deposited the cashier's check from Hardeway. No evidence was presented that appellant ever attempted to "make good" on his personal check or apply the cashier's check to his debt to Gunnels. Based on the record, we conclude a rational trier of fact could have found, beyond a reasonable doubt, that appellant intended to deprive Gunnels of the full amount of $26,800.

We overrule appellant's third and fourth points of error.

In his fifth point of error, appellant argues that the evidence was factually insufficient to support his conviction based on the same grounds alleged in his third and fourth points of error.

■ In reviewing the factual sufficiency of the evidence, we examine all the evidence neutrally and ask whether proof of guilt is so obviously weak or greatly outweighed by contrary proof as to indicate that a manifest injustice has occurred. *King*, 29 S.W.3d at 563. In conducting our analysis, we may disagree with the jury's determination, even if probative evidence supports the verdict, but we must also avoid substituting our judgment for that of the fact finder. *Id.* "What weight to give contradictory testimonial evidence is within the sole province of the jury because it turns on an evaluation of credibility and

demeanor." *Cain v. State,* 958 S.W.2d 404, 408–09 (Tex.Crim.App.1997).

Appellant contends the evidence showed merely an intent to deprive Gunnels of $16,800. As noted above, the evidence showed, at best, a conflict regarding whether Hardeway's cashier's check was received and deposited by Gunnels. The jury was entitled to resolve any conflicts in the evidence. *Id.* at 410. A jury decision is not manifestly unjust merely because the jury resolved conflicting views of evidence in favor of the State. *Id.* Based on the record, we conclude the evidence was factually sufficient to support appellant's conviction.

We overrule appellant's fifth point of error.

### Improper Jury Argument

In his first point of error, appellant argues that the trial court erred in denying his motion for mistrial based on improper argument by the State at the punishment phase of trial.

The law provides for, and presumes, a fair trial free from improper argument by the State. *Long v. State,* 823 S.W.2d 259, 267 (Tex.Crim.App.1991). There are four permissible areas of jury argument: (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) answers to the argument of opposing counsel, and (4) pleas for law enforcement. *Cifuentes v. State,* 983 S.W.2d 891, 895 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd).

In its brief, the State asserts "the argument in the present case was clearly a plea for law enforcement." We disagree. The argument complained of fell well outside the permissible areas of argument:

> Ladies and gentlemen, there's something important that I cannot tell you about concerning why you should not give [appellant] anything less than ten years. There's a very important reason but legally I'm not allowed to tell you what it is but it is very important. Trust me on this. If you give [appellant] less than ten years, you will find out later what's going to happen.

We note that a "defendant may not be released on bail pending the appeal from any felony conviction where the punishment equals 10 years confinement." TEX. CODE CRIM. PROC. art. 44.04(b) (Vernon Supp.2002). Whether the State was alluding to this provision or something else, the jury was put in the position of having to speculate on a "very important" matter not before it.

It has long been established that a prosecutor cannot use closing argument to place matters before the jury that are outside the record and prejudicial to the accused. *Everett v. State,* 707 S.W.2d 638, 641 (Tex.Crim.App.1986). Arguments referencing matters that are not in evidence and may not be inferred from the evidence are usually "designed to arouse the passion and prejudices of the jury and as such are highly inappropriate." *Borjan v. State,* 787 S.W.2d 53, 57 (Tex.Crim.App. 1990). Argument inviting speculation is of grave concern:

> Argument injecting matters not in the record is clearly improper; but *argument inviting speculation is even more dangerous* because it leaves to the imagination of each juror whatever extraneous 'facts' may be needed to support a conviction.

*Everett,* 707 S.W.2d at 641 (quoting *Berryhill v. State,* 501 S.W.2d 86, 87 (Tex.Crim. App.1973) (emphasis added)). Whether the prosecutor was alluding to article 44.04(b) or some other matter not before the jury, it clearly invited the jury to speculate on something "very important,"

which would support a maximum sentence. The argument was clearly improper.

■■ Although appellant objected to the argument and requested a mistrial, he failed to request an instruction to disregard. Generally, the appropriate remedy for improper argument is an instruction to disregard. *McGinn v. State*, 961 S.W.2d 161, 165 (Tex.Crim.App.1998). Requesting a mistrial is insufficient to preserve error in most circumstances because the appropriate remedy for a curable, erroneous argument to which an objection has been sustained is an instruction to disregard. *Id.* However, if the prejudice arising from the improper argument is *incurable*, a mistrial is appropriate and a request for a mistrial will preserve error on appeal. *Id.; Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim.App.1996). Thus, if the prejudice created by the improper argument was curable by an instruction to disregard, error was not preserved. We must determine whether the prejudicial effect of the argument was *incurable*.

■ The harm arising from improper jury argument is *incurable* if the argument (1) is extreme, improper, injects new and harmful facts into the case, or violates a mandatory statutory provision and (2) as a result, is so inflammatory that its prejudicial effect cannot reasonably be cured by an instruction to disregard. *Long*, 823 S.W.2d at 267; *Logan v. State*, 698 S.W.2d 680, 682 (Tex.Crim.App.1985).

■ Here, the prosecutor's remarks injected "new and harmful" facts into the proceeding by asking the jury to consider, outside the evidence presented, "something important that I cannot tell you about." The argument, as stated, invited the jury to consider a matter not before it. The prosecutor's remarks were also "extreme and improper" in that he urged the jury to consider matters outside of the trial record while simultaneously acknowl-edging that to do so was prohibited by law. The prosecutor essentially urged the jury to ignore the rule of law and "[t]rust me on this."

The argument was, by its very nature, inflammatory. The prosecutor told the jury there was "a very important reason" they should give appellant the maximum sentence, but he was "legally" prohibited from telling them what it was. If the jury gave appellant anything less than the maximum, they would "find out later what's going to happen." The very tone of the argument was that something bad, if not horrible, would happen if the jury failed to assess the maximum sentence. As noted above, such argument is inherently "dangerous." *Everett*, 707 S.W.2d at 641. Here, an instruction from the trial court to the jury to disregard such a comment would have had no curative effect.

■ Mistrial is an appropriate remedy when, as here, the objectionable event is so inflammatory that a curative instruction is not likely to prevent a jury from being unfairly prejudiced against a defendant. *Young v. State*, 73 S.W.3d 482, 485 (Tex.App.-Houston [1st Dist.] 2002, pet. filed). Because the prejudicial effect of the manifestly "dangerous" and improper argument was incurable, we hold that, by requesting a mistrial, appellant made a proper request for relief in this instance, preserving error for our review. *See Montoya v. State*, 744 S.W.2d 15, 37 (Tex. Crim.App.1987). We further hold that the trial court erred in denying appellant's motion for mistrial.

■ We must next determine whether the trial court's error requires reversal. *See* Tex.R.App. P. 44.2. A careful reading of Rule 44.2 and relevant case law reveals several types of error that can occur in criminal cases: (1) constitutional error that is not subject to harmless error analysis

(i.e., structural error); (2) constitutional error that is harmful; (3) constitutional error that is harmless; (4) non-constitutional error that is harmful (i.e., affects a substantial right); and (5) non-constitutional error that is harmless (i.e., does not affect a substantial right). *Trahan v. State*, 991 S.W.2d 936, 941 (Tex.App.-Houston [1st Dist.] 1999, no pet.). When conducting a Rule 44.2 harm analysis, our first task is to determine whether the error is of constitutional magnitude or an error that affects a substantial right. *See id.*

The Court of Criminal Appeals has characterized erroneous rulings regarding certain types of improper jury argument as non-constitutional "other errors" within the scope of Rule 44.2(b). *See Mosley v. State*, 983 S.W.2d 249, 259 (Tex.Crim.App. 1998). In *Mosley*, the court was faced with assessing the harm caused by an improper argument concerning the honesty and integrity of defense counsel. *Mosley*, 983 S.W.2d at 258–59. The court specifically distinguished attacks on defense counsel from arguments that may result in constitutional violations and noted that, "[a]lthough a special concern, improper comments on defense counsel's honesty have never been held to amount to a constitutional violation." *Id.* at 259. The court then conducted a harm analysis pursuant to Tex.R.App. P. 44.2(b). *Mosley*, 983 S.W.2d at 260.

■■■■ We distinguish *Mosley*. Here, by urging the jury to consider matters not before them, and while effectively acknowledging that to do so was a violation of their solemn oath [3] as jurors, the prosecu-

tor's remarks violated the Due Process Clause of the Fourteenth Amendment [4] and implicated the Confrontation Clause of the Sixth Amendment.[5] The ability to test the accuracy of evidence is "so important that the absence of proper confrontation at trial 'calls into question the ultimate integrity of the fact-finding process.'" *Ohio v. Roberts*, 448 U.S. 56, 63, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973)). Here, the ability to test the accuracy of any alluded to evidence supporting a maximum sentence would have been critical.

■■■■ Moreover, it is well-settled and self-evident that an "improper argument may present a Fourteenth Amendment due process claim if the prosecutor's argument so infected the trial with unfairness" as to make the result "a denial of due process." *Miller v. State*, 741 S.W.2d 382, 391 (Tex.Crim.App.1987) (citing *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986)). Here, the argument invited speculation as to a "very important" matter which would, if known, support the maximum punishment. The prosecutor compounded the problem by essentially asking the jury to ignore the rule of law and "[t]rust me on this." The argument left to the imagination of each juror whatever extraneous matters he or she each may have needed to support their assessment of the maximum sentence. Although most jury argument error is non-constitutional, here, the improper argument so infected the punishment phase of the trial with unfairness as to constitute a

---

**3.** After a jury is selected, the following oath is administered to them: "You and each of you do solemnly swear that in the case of the State of Texas against the defendant, you will a true verdict render *according to the law and the evidence,* so help you God." Tex.Code Crim.

Proc. Ann. art. 35.22 (Vernon 1989) (emphasis added).

**4.** U.S. Const. amend. XIV.

**5.** U.S. Const. amend. VI.

violation of due process. Thus, we hold the error in this case was of constitutional magnitude.

If the record before us reveals constitutional error that is subject to a harmless error review, we must reverse a judgment of conviction or punishment unless we determine, beyond a reasonable doubt, that the error did not contribute to the conviction or punishment. TEX.R.APP. P. 44.2(a). We must first, therefore, determine whether the constitutional error in this case is "subject to harmless error review." *Id.*

We note that it may seem incongruous for us to determine whether the effect of an improper jury argument, which we have held violated appellant's constitutional rights and caused "incurable" prejudice, was harmful or harmless. "Incurable" is defined as "[n]ot admitting of remedy, correction, or reformation."[6] However, except for certain federal constitutional errors labeled by the United States Supreme Court as "structural," no error is categorically immune to a harmless error analysis. *See Trahan,* 991 S.W.2d at 940.

■ Structural defects in the constitution of the trial mechanism defy analysis by "harmless-error" standards. *Arizona v. Fulminante,* 499 U.S. 279, 280, 111 S.Ct. 1246, 1249, 113 L.Ed.2d 302 (1991); *Rey v. State,* 897 S.W.2d 333, 344 (Tex.Crim.App. 1995). The entire conduct of the trial from beginning to end is obviously affected by structural errors such as: the absence of counsel for a criminal defendant, a partial judge, the unlawful exclusion of members of the defendant's race from a grand jury, the right to self-representation at trial, or the right to public trial. *Rey,* 897 S.W.2d at 344. Each of these constitutional deprivations is a similar structural defect affecting the framework within which the trial

proceeds, rather than simply an error in the trial process itself. *Id.*

■ The error in this case arose during the State's argument in the punishment phase of the trial. Although egregious, it was not a structural error, but merely an error that was committed in the trial process itself. The entire conduct of the trial from beginning to end was not affected by the error. Thus, a Rule 44.2(a) analysis is required, and we apply the standard of review for constitutional error as set forth in *Harris v. State,* 790 S.W.2d 568, 587–88 (Tex.Crim.App.1989):

> [A] reviewing court in applying the harmless error rule should not focus upon the propriety of the outcome of the trial. Instead, an appellate court should be concerned with the integrity of the process leading to the conviction. Consequently, the court should examine the source of the error, the nature of the error, whether or to what extent it was emphasized by the State, and its probable collateral implications. Further, the court should consider how much weight a juror would probably place upon the error. In addition, the Court must also determine whether declaring the error harmless would encourage the State to repeat it with impunity. In summary, the reviewing court should focus not on the weight of the other evidence of guilt, but rather on whether the error at issue might possibly have prejudiced the jurors' decision-making; it should ask not whether the jury reached the correct result, but rather whether the jurors were able properly to apply law to facts in order to reach a verdict.

*Id.; see also Orona v. State,* 791 S.W.2d 125, 130 (Tex.Crim.App.1990).

■ In regard to the source and nature of the error, we have already held

**6.** THE COMPACT OXFORD ENGLISH DICTIONARY 835    (2d ed.1991).

that the prosecutor's argument was egregiously improper and the resulting harm could not have been cured by an instruction to disregard. The emphasis of the State's improper argument, coming during closing argument of the punishment phase of appellant's trial, was significant. There can be no doubt but that a juror would place considerable weight on the prosecutor's comments, given their source and the clear implication and meaning of the words used to urge the jurors to impose a maximum sentence for a "very important" reason. Additionally, the prosecutor's improper argument made it especially difficult for the jurors to properly apply the law to the facts in order to determine a just punishment, based on the fact that he essentially urged them not to do so. With regard to whether the State would ever repeat such an argument, we can only trust that no prosecutor would ever do so again.

Given the flagrant and severely improper nature of the prosecutor's argument, the wide range of punishments available to the jury, and the jury's decision to impose the maximum sentence, we cannot conclude beyond a reasonable doubt that the error did not contribute to appellant's punishment in this case. *See* TEX.R.APP. P. 44.2(a).

In reaching our holding on this point of error, we must also address two cases from our sister court. In *Ortiz v. State*, 999 S.W.2d 600, 604 (Tex.App.-Houston [14th Dist.] 1999, no pet.), the court of appeals held that a prosecutor's argument concerning two pages of a document which were not admitted into evidence was improper because the argument "invited the jury to speculate on evidence outside the

record," and the trial court erred in overruling the defendant's objections to the argument. *Id.* at 605. The *Ortiz* court then reviewed the trial court's error under a Rule 44.2(b) analysis, and, citing *Mosley*, noted that "argument inviting speculation on evidence outside the record does not constitute constitutional error." *Id.* at 605–06.[7] The court of appeals concluded the trial court's error was harmful, reversed the judgment, and remanded the case for a new trial. *Id.* at 607.

In *Tucker v. State*, 15 S.W.3d 229, 237 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd), the court of appeals concluded that a prosecutor's improper argument regarding autopsy procedures injected "new and harmful" facts outside the record, "potentially impacted" the defendant's claim of self-defense, and was, therefore, improper. The *Tucker* court held that the trial court's instruction to the jury to disregard the argument had no curative effect, and the trial court erred in denying the defendant's motion for mistrial. *Id.* Interpreting *Mosley* as "characteriz[ing] erroneous rulings regarding improper comments during jury argument as encompassing non-constitutional 'other error,'" the *Tucker* court, following *Ortiz*, then applied a Rule 44.2(b) analysis and found the error harmless, given the trial court's instruction to disregard, the tenuousness of the defendant's self-defense claim, and the "minimal emphasis" placed on the improper comment. *Id.* at 238.

We respectfully disagree with the *Ortiz* and *Tucker* courts' interpretation of *Mosley*, essentially characterizing all "erroneous rulings regarding improper comments during jury argument as encompassing non-constitutional 'other error.'" Mos-

---

**7.** The *Ortiz* court did acknowledge, in a footnote, that "there may be circumstances where an improper argument might implicate a constitutional right[,] for example[,] one's Sixth Amendment right of confrontation or Fifth Amendment right against self-incrimination." *Id.* at 606 n. 3.

ley's narrow holding does not characterize *all* improper jury argument as non-constitutional "other error" under Rule 44.2(b) but specifically applies only to argument that "improperly strik[es] at a defendant over the shoulder of counsel." 983 S.W.2d at 259. Both *Ortiz* and *Tucker* give the improper jury argument holding in *Mosley* a breadth unintended by the Court of Criminal Appeals.

Citing *Mosley*, the Court of Criminal Appeals has subsequently noted, "For arguments that strike over the shoulders of counsel, we have held that the harm standard for non-constitutional errors—found in Texas Rule of Appellate Procedure 44.2(b)—applies." *Martinez v. State*, 17 S.W.3d 677, 692 (Tex.Crim.App.2000). The court noted generally that comments upon matters outside the record, while falling outside the areas of permissible jury argument, "*do not appear* to raise any unique concerns that would require us to assign constitutional status." *Id.* (emphasis added). However, the court expressly stated:

> *Mosley's* holding *suggests* that *most* comments that fall outside the areas of permissible argument will be considered error of the non-constitutional variety.

*Id.* (emphasis added). This is a far cry from a holding that *all* "argument inviting speculation on evidence outside the record does not constitute constitutional error." *See Ortiz*, 999 S.W.2d at 605–06.

In response to appellant's argument regarding the prosecutor's improper statements to the jury, the State argues that the jury was presented with ample other evidence upon which it could rely in assessing appellant's punishment.[8] However-

er, as noted above, that is not the standard against which we must measure the harm to appellant. As the Court of Criminal Appeals observed in *Orona:*

> *The task before us is not to determine the harmfulness of the error simply by examining whether there exists overwhelming evidence to support appellant's guilt. ... It is the effect of the error and not the existence of overwhelming evidence or the lack thereof that dictates our judgment.*

791 S.W.2d at 130 (citations omitted) (emphasis added). In *Orona*, decided before the adoption of Rule 44.2 and pre-*Mosley*, the court recognized that "overwhelming evidence of guilt is a variable to be calculated," and the court concluded, beyond a reasonable doubt, that a prosecutor's improper jury argument did not contribute to the jury's determination of the defendant's guilt or punishment. *Id.* In that case, during argument, the prosecutor made a "passing reference to defense counsel's level of experience and ability as an advocate." *Id.* Following defense counsel's objection, which the trial court overruled, the State abandoned the argument. *Id.* The Court of Criminal Appeals held that, while the trial court should have sustained the objection, the probable impact, if any, of the error was minimal. *Id.*

Here, the prosecutor's argument went far beyond a mere passing reference or non-constitutional violation, and the effect of the error was an incurable violation of due process. The very nature of the argument itself, asking for imposition of the maximum punishment allowed because of "something important that I [legally] cannot tell you about," precludes us from de-

---

8. The evidence presented at the punishment phase of trial showed that, among other things, appellant had been previously convicted of unauthorized use of a motor vehicle, had falsely held himself out as a licensed

attorney and charged others for "legal" services, and had falsely acquired several other automobiles with the intent to deprive the owners of the property.

termining beyond a reasonable doubt that the error did not contribute to the punishment assessed.

Accordingly, we sustain appellant's first point of error.

### Ineffective Assistance of Counsel

In his second point of error, appellant argues that he was denied his constitutional right to effective assistance of counsel [9] when his attorney failed to request an instruction to disregard the State's jury argument at the punishment phase of trial, as set out above.

Because we hold the prejudicial effect of · the State's improper jury argument was incurable and harmful, we need not address appellant's second point of error.

### Conclusion

We affirm the judgment of the trial court as to appellant's conviction, reverse the judgment of the trial court as to appellant's punishment, and remand this cause for a new punishment hearing.

En banc consideration was requested.

A majority of the Court voted against en banc consideration of the panel's decision.

Justice JENNINGS concurring in the denial of en banc consideration.

Justice TAFT, joined by Justice NUCHIA, dissenting from the denial of en banc consideration.

Justice MIRABAL not participating.

JENNINGS, Justice, concurring in the denial of en banc consideration.

I concur in the denial of en banc consideration and write separately to respond to the dissenting opinion. The error in this case amounted to a violation of the rule of law, and the panel objectively followed the rule of law in reaching its decision. The panel opinion follows well-established precedent of the United States Supreme Court and Texas Court of Criminal Appeals, and the majority of this Court responsibly rejected en banc consideration.

### En Banc Standard

Appellate court panels are essentially three judge courts, and that is why en banc consideration is disfavored:

> ***En banc consideration disfavored.*** En banc consideration of a case is not favored and should not be ordered unless necessary to secure or maintain uniformity of a court's decisions or unless extraordinary circumstances require en banc consideration.

Tex.R. App P. 41.2(c).

The standard for en banc consideration is not whether a majority of the en banc court may disagree with all or a part of a panel opinion. Neither is an assertion that an issue is "important" sufficient. Rather, when there is no conflict among panel decisions, the existence of "extraordinary circumstances" is required before en banc consideration may be ordered. *Id.* Here, en banc consideration is not "necessary" to maintain uniformity with prior First Court of Appeals decisions. Moreover, the panel's limited holding regarding the State's uniquely egregious argument does not amount to an "extraordinary circumstance" which "requires" en banc consideration.

### Incurable Error

The dissenting opinion contends that the panel erroneously holds that the trial court erred in denying appellant's motion for mistrial after the State argued:

---

**9.** U.S. Const. amend. VI.

Ladies and gentlemen, there's something important that I cannot tell you about concerning why you should not give [appellant] anything less than ten years. There's a very important reason but legally I'm not allowed to tell you what it is but it is very important. Trust me on this. If you give [appellant] less than ten years, you will find out later what's going to happen.

If the prejudice arising from an improper argument is *incurable,* a mistrial is appropriate and a request for a mistrial will preserve error on appeal. *McGinn v. State,* 961 S.W.2d 161, 165 (Tex.Crim.App. 1998); *Cockrell v. State,* 933 S.W.2d 73, 89 (Tex.Crim.App.1996). Harm arising from improper jury argument is *incurable* if the argument (1) is extreme, improper, injects new and harmful facts into the case, or violates a mandatory statutory provision and (2) as a result, is so inflammatory that its prejudicial effect cannot reasonably be cured by an instruction to disregard. *Long v. State,* 823 S.W.2d 259, 267 (Tex. Crim.App.1991); *Logan v. State,* 698 S.W.2d 680, 682 (Tex.Crim.App.1985).

The panel concludes that an instruction from the trial court to the jury to disregard the State's improper argument would have had no curative effect. As noted in the panel opinion, the argument injected "new and harmful" facts into the proceeding by asking the jury to consider, outside the evidence presented, "something important that I cannot tell you about." The State's remarks were also "extreme and improper" in that the State urged the jury to consider matters outside of the trial record *while simultaneously acknowledging that to do so was prohibited by law.*

The State essentially asked the jury to disregard the rule of law and "[t]rust me on this." The very nature of this argument precluded a curative instruction. The improper argument made it especially difficult for the jurors to properly apply the law to the facts in order to determine a just punishment because the State essentially urged them not to do so. If the jury were to disregard the rule of law and "trust" the State, how can one presume that the jury would have followed any conceivable instruction to disregard? Although the law in this area is well-settled, the dissenting opinion offers its own instruction to "totally" disregard the State's improper argument, which it contends could have cured any possible harm. Appellate courts should not act in such an advisory capacity.

Moreover, none of the cases the dissenting opinion relies on to support its argument are on point. The Court of Criminal Appeals in *Logan* noted that other, harmless inferences could have been drawn from the State's objectionable argument. *Id.* at 683. The dissenting opinion's reliance on the "Adolf Hitler analogy" is also misplaced. *See Long,* 823 S.W.2d at 267 n. 9. Without quoting the improper argument, the Court of Criminal Appeals, in a footnote, stated that, while it believed an instruction to disregard the prosecutor's reference would have cured any error, it was hesitant to conclude the remark was improper "in light of this record" and the defense counsel's argument. *Id.*

Further, the dissenting opinion's reliance on the "death warrants" argument is misplaced as well. *See Ganesan v. State,* 45 S.W.3d 197, 203 (Tex.App.-Austin 2001, pet. ref'd). In this solicitation of murder case, the Austin Court noted that the prosecutors exceeded the scope of proper jury argument by telling the jurors that they would be condemning two women to death if they found the defendant not guilty. *Id.* at 206. The evidence showed that the defendant had twice solicited his wife's murder and also solicited the murder of her attorney. *Id.* Although the Court not-

ed that the question was a "close one," it held that the prosecutor's argument "was not so manifestly improper or prejudicial *under the circumstances* as to warrant reversal." *Id.* at 207 (emphasis added).

The simple fact is that questions of whether an instruction to disregard would have cured error are fact-intensive. These decisions, by their nature, must be based on the facts of each particular case, and the en banc Court has appropriately given deference to the panel's judgment. Here, the argument was uniquely egregious in that the State essentially urged the jury to ignore the rule of law, and the panel's opinion is sound.

### Due Process

The dissenting opinion also contends that the panel erroneously holds that the error in this case was of constitutional magnitude.[1] The panel opinion narrowly holds:

> Here, by urging the jury to consider matters not before them, and while effectively acknowledging that to do so was a violation of their solemn oath as jurors, the prosecutor's remarks violated the Due Process Clause of the Fourteenth Amendment and implicated the Confrontation Clause of the Sixth Amendment.

The opinion specifically notes:

> Although most jury argument error is non-constitutional, here, the improper argument so infected the punishment phase of the trial with unfairness as to constitute a violation of due process.

In so holding, the panel opinion followed the precedent of both the United States Supreme Court and the Texas Court of Criminal Appeals, which have unequivocally stated that an "improper argument may present a Fourteenth Amendment due process claim if the prosecutor's argument so infected the trial with unfairness" as to make the result "a denial of due process." *Miller v. State,* 741 S.W.2d 382, 391 (Tex. Crim.App.1987) (citing *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986)).

Here, the improper argument invited speculation as to a "very important" matter which would, if known, support the maximum punishment. The argument left to the imagination of each juror whatever extraneous matters he or she each may have needed to support their assessment of the maximum sentence. The prosecutor compounded the problem by asking the jury to ignore the rule of law and "[t]rust me on this." The panel, therefore, concludes that the improper argument so infected the punishment phase of the trial with unfairness as to constitute a violation of due process.

### Conclusion

The bottom line is that the panel opinion does not in any way deviate from precedent of this Court, and its limited holding in regard to the uniquely egregious argument in this case does not amount to an "extraordinary circumstance" which "requires" en banc consideration.

Courts are most vulnerable and come nearest to illegitimacy when they deal with judge-made law having little or no cognizable roots in established precedent or the language and design of constitutional law. Here, the panel opinion objectively follows

---

1. The dissenting opinion also criticizes the panel for "launching into its own analysis." In regard to this second point, appellate courts cannot ignore precedent even if a party fails to cite or argue it. Nor are appellate courts bound to simply regurgitate the arguments made in the parties' briefs. Rather, it is our obligation to address "every issue raised and necessary to final disposition of the appeal." TEX.R.APP. P. 47.1.

the rule of law. Even if other members of this Court disagree with the panel's decision, it was the panel's decision to make. Thus, I concur in the denial of en banc consideration in this case.

TAFT, Justice, dissenting from denial of en banc consideration.

Bad facts do not have to make bad law. All of us can agree that the complained-of portion of the prosecutor's punishment argument in this case was beyond the pale. All of us may even be able to agree to reverse this case within the normal bounds of appellate review. Because the Panel Opinion reaches beyond those normal bounds, however, I respectfully dissent to the denial of en banc review.

There are two errors in the Panel Opinion: (1) the conclusion that the prosecutor's argument was incapable of being cured by an instruction to disregard and (2) the conclusion that the error is constitutional, rather than other, error. Although the first conclusion can be reached by addressing arguments made by appellant, the second conclusion is contrary to the arguments of the parties. The bottom line is that the Panel Opinion cites no case calling for either of its erroneous conclusions, when it could have reversed this case, within the normal bounds of appellate review, by focusing on ineffective assistance of counsel, an issue actually raised by appellant.

### Was the Argument Capable of Being Cured by an Instruction?

First, consider the argument itself and the likely effect it would have had on the jury, even in the absence of any objection or instruction to disregard. To place the argument in context,[1] the argument consists of seven lines in a three-page argu-

ment that urged the jury to assess the maximum no less than 10 times based on the aggravated facts of the case, particularly the facts adduced at the punishment phase:

Ladies and gentlemen, it's like what Paul Harvey always says, "Now you've heard the rest of the story." You know what kind of person this man is. You didn't know beforehand but you sure do know now.

This is a man that steals from young women. He steals from ministers, from individuals who are in business that give him jobs and give him a chance. He's a user. He's a con man. He's a major offender, someone Sgt. Kucifer and other officers have been looking for for a long time. When three different police agencies, the Sheriff's Department of Harris County, Houston Police Department, Texas Department of Safety Motor Vehicle Theft Division, when they all have investigations on you and want you, you know you're a bad guy.

Just look at the amount of vehicles that were stolen or that he attempted to steal. He has taken almost $200,000 worth of vehicles. That's unbelievable. **I wish he could get more than ten years. I'm sorry that's all you can give him but that is the maximum.**

He stole thousands of dollars of cash among other things from other individuals. He got $2700 from Mr. Gathers. He got several hundreds of dollars off of Ms. Pittman and her father who helped her take care of her credit problems. You heard about Ms. Darby's credit card bill. Does he ever try to pay anything back? No. He expects other people to give him something but he never gives anything in return. He just takes and takes and takes.

1. This context is absent from the Panel Opinion.

This man is not going to stop. Do you think he's going to stop? Look at his history. It goes back to 1996. Maybe the fact he represented himself as a lawyer doesn't offend you but it does offend me. He takes people's money, their hard earned money, and says he's a professional, a lawyer. He is not entitled to do that.

Look at him. **The only way you're going to keep him from doing anything more is to give him the maximum sentence. Send a message to the community that you gave him ten years in prison and assessed a $10,000 fine.** Fill out that very bottom of the verdict form there. **That's the most you can do to this man.**

**When somebody asks you later what this man got, you'll be able to say he got ten years and a $10,000 fine** or whatever it is that you give him. You're going to have to tell them about the justice system. If you give him any less, what does that say? What happened? **I'm asking you to assess the maximum sentence.** Don't let anything less than that happen.

*Ladies and gentlemen, there's something important that I cannot tell you about concerning why you should not give him anything less than ten years. There's a very important reason but legally I'm not allowed to tell you what it is but it is very important. Trust me on this. If you give him less than ten years, you will find out later what's going to happen.*

Defense Counsel: I would object. That is outside the record. I would object.

The Court: Sustained.

Defense Counsel: I'd move for a mistrial.

The Court: Denied.

I'm going to ask you, ladies and gentlemen, to think about the victim in this case. How many people were involved starting with Mr. Gunnels all the way down to the officer in the final arrest? Think about what they've had to endure just by being up here to tell you what happened. Their lives are put on hold for this and all because of him, this man right here.

**I think it's pretty clear that the only appropriate punishment in this case is ten years in prison.** It would be a travesty if it were anything less. In fact, I wish it could be more. **Send a statement to him and send a statement to anybody who looks at this sentence in the future by giving him ten years in prison and a $10,000 fine.** When that Judgment is sent up, **whoever is looking at that prison sentence can see that a jury gave this man ten years and a $10,000 fine, that he received the maximum,** and maybe they'll take that into consideration. Maybe it will tell him that when he gets out that he can't continue to do it again. **Give him the maximum.**

Maybe we'll see him again. Maybe I'll prosecute him again and maybe not. It's in your hands now. **I'd ask you to remember all the victims' testimony and consider every potential victim in this county and give him the maximum sentence.** Thank you very much.

(Bolded are the prosecutor's arguments to give the maximum; bolded and italicized is the complained-of argument.)

It is important to begin any analysis of whether the argument was capable of being cured by an instruction to disregard with the likely effect the complained-of argument would have had on an ordinary, reasonable juror. The prosecutor asked the jurors to consider something important that the law did not allow him to explain; thus, they should trust him on this, or, if they assessed less than 10 years, they

would find out later what was going to happen. What is a juror to make of this argument? Is this the sort of argument that engenders trust in the prosecutor by jurors? Does this argument inflame jurors? Or does it cause curiosity and bewilderment? Does the argument seem to admit within itself that it is improper?

Then, consider that defense counsel objected to the prosecutor's argument as being outside the record, and the trial court sustained the objection. What would jurors conclude from that? Consider that this was not the first time during trial that the jurors had observed objections and trial-court rulings. At the guilt phase of this short trial, defense counsel objected three times, and the trial court sustained all three objections and volunteered an instruction to the prosecutor not to lead after sustaining one objection. At the guilt phase, the prosecutor objected seven times, the trial court sustained four of the objections, and the trial court instructed defense counsel to rephrase her question twice. At the punishment phase, defense counsel objected seven times, and the trial court sustained five objections. Wouldn't a reasonable juror, having observed many objections sustained, with instructions given to counsel on some occasions, conclude that the prosecutor had engaged in improper argument? Would a reasonable juror have been swayed by an argument that not only appeared to be improper on its face, but which the trial court had deemed improper by sustaining appellant's objection?

In determining the actual issue before us, of whether an instruction to disregard could have cured any error, consider the following, possible instruction:

Ladies and Gentlemen of the Jury, you are instructed to totally disregard the prosecutor's argument urging you to assess no less than 10 years for reasons the prosecutor admits he is not allowed to tell you. I instruct you to disregard the argument and not to consider it for any purpose. It's like parole and good-conduct time, which we discussed during jury selection,[2] and about which I instructed you in the jury charge,[3] that you are not to consider it for any reason in arriving at your verdict. What you are to consider is the evidence that has been introduced throughout the trial, and nothing else. Is there anyone on this jury who does not understand that I am instructing you to disregard the prosecutor's last argument totally? Is there anyone on this jury who has even the slightest doubt that he or she can obey my instruction to disregard?

I submit that ordinary, reasonable jurors would have been able to obey such an instruction by the trial court. Indeed, they are normally presumed to obey such an instruction:

The adversary system thus depends upon a belief that the declaration of a mistrial ought to be an exceedingly uncommon remedy for the residual prejudice remaining after objections are sustained and curative instructions given. For this reason, our system presumes that judicial admonishments to the jury are efficacious. Only when it is apparent that an objectionable event at trial is

2. The trial court had spent an entire page of the record during jury selection explaining that the jury could not consider parole and good-conduct time.

3. The jury charge contained a page of instructions regarding parole and good time, concluding with an instruction not to consider how it would affect appellant in this case. The charge contained an additional instruction that, in fixing the defendant's punishment, the jury was to consider the evidence and not to discuss how long appellant would be required to serve the sentence imposed.

so emotionally inflammatory that curative instructions are not likely to prevent the jury being unfairly prejudiced against the defendant may a motion for mistrial be granted.

*Bauder v. State,* 921 S.W.2d 696, 698 (Tex. Crim.App.1996) (citations omitted).

I acknowledge that such an instruction to disregard was not given in this case, but whose fault is that? I submit that the error in this case lies in defense counsel's not requesting an instruction to disregard, which should have led the Panel Opinion to decide the case on the second point of error, ineffective assistance of counsel.

Instead of beginning with a determination of whether an instruction could have cured any prejudice from the argument here, the Panel Opinion began with the definition of what constitutes incurable argument. The Panel Opinion then attempted to show how the argument here neatly matches each part of the definition of incurable argument. The main difficulty is trying to demonstrate that the argument here is inflammatory. To buttress its position, the Panel Opinion employs statements about the dangerousness of speculation from a case in which the trial court *overruled* the defense objection. *See Everett v. State,* 707 S.W.2d 638, 641 (Tex. Crim.App.1986). The Panel Opinion also includes a quotation from a case in which two defense objections were *overruled* to support the proposition that arguments outside the evidence are usually designed to arouse the passion and prejudices of the jury. *See Borjan v. State,* 787 S.W.2d 53, 57 (Tex.Crim.App.1990). Of course, here, the trial court *sustained* appellant's objection.

Examples of inflammatory arguments for which instructions to disregard were sufficient to cure any prejudice are found in the very cases the Panel Opinion cites for the general proposition of what consti-

tutes incurable argument. *See Long v. State,* 823 S.W.2d 259, 267 (Tex.Crim.App. 1991) (holding instruction to disregard cured prejudice from prosecutor using an Adolf Hitler analogy to show the accused was evil); *Logan v. State,* 698 S.W.2d 680, 683–84 (Tex.Crim.App.1985). The *Logan* case is particularly instructive because what happened in the Dallas Court of Appeals seems to be what is happening in this case. A majority of the panel of the Dallas Court of Appeals had apparently been particularly incensed by the prosecutor's conduct at trial. Despite a motion in limine ruling, which prohibited the prosecutor from developing the fact that the accused and her alibi witness (both females) had had a homosexual relationship, the prosecutor argued that the two had slept together for five years. *Id.* at 681, 683. The Dallas Court of Appeals reversed even though an instruction to disregard had been given. *Id.* at 681. The Court of Criminal Appeals reversed the Court of Appeals, disagreeing that the only inference was that the two were homosexual lovers, but holding that, even if that had been the only inference, the argument was cured by the instruction to disregard. *Id.* at 683.

Comparing the accused to Adolf Hitler and implying that the accused is homosexual are good examples of inflammatory arguments. Another example is, "If you find the defendant 'Not Guilty,' you will be signing the State's witnesses' death warrants." *See Ganesan v. State,* 45 S.W.3d 197, 206 (Tex.App.-Austin 2001, no pet. h.) (holding any prejudice cured by instruction). An inflammatory argument fans the flames of emotion to carry the jurors to an irrational verdict. All of the above examples of inflammatory arguments, however, were cured by instructions to disregard. This includes the very cases upon which the Panel Opinion relies for the guiding

principle in this area. From this, one may fairly infer that only an extremely inflammatory argument is incapable of being cured by an instruction.

It is noteworthy that the Panel Opinion cites no case that was reversed in which, as here, the defense objection to argument was sustained, but no instruction to disregard was requested. To the contrary, the cases it does cite for the general proposition of what constitutes incurable argument held that an instruction to disregard cured any prejudice from inflammatory arguments invoking Adolf Hitler and homosexuality. Several adjectives come to mind to describe the prosecutor's argument in this case, such as bizarre, incongruous, or curious, but inflammatory, much less extremely inflammatory, does not seem to fit.

To hold that the argument in this case was so inflammatory that it was incapable of being cured by an instruction to disregard derogates the ability of trial courts to formulate instructions to disregard prejudicial matters and the ability of jurors to follow those instructions. As demonstrated, the Panel Opinion jumps from the general proposition, over the very holdings of the cases its cites, to reach its conclusion that the argument here was incurable. This is a reach too far.

### Was the Error Constitutional?

Having held that the error here did not have to be preserved by the usual method, the Panel Opinion reviewed the error as constitutional error, even though neither party had done so. There is sometimes a danger when appellate courts stray from the arguments of the parties. It may give the appearance that judicial restraint has been abandoned. Here, appellant's brief claimed that the argument was improper, not because it violated some constitutional principle, but because it was contrary to black-letter law. The State's brief also concluded that the error was not constitutional, but other, error.

Nevertheless, the Panel Opinion launched into its own analysis, seizing upon potential exceptions from the only two cases in which the Court of Criminal Appeals has addressed whether argument error is constitutional or other error, in both cases holding that the improper arguments constituted other error. *See Martinez v. State*, 17 S.W.3d 677, 692 (Tex. Crim.App.2000) (noting that comments upon matters outside the record generally do not raise unique concerns that would require assigning constitutional status); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim.App.1998) (noting that, even though of special concern, improper comments on defense counsel's honesty have never been held to amount to a constitutional violation). The Panel Opinion spends nearly a fourth of its entire length trying to justify why the error in this case is constitutional error, even though the parties analyzed it as other error.

What is disconcerting about the Panel Opinion's analysis is that it finds constitutional error because the prosecutor argued outside the evidence (allegedly implicating confrontation rights) unfairly (allegedly implicating due-process rights). I suggest that most improper arguments of prosecutors could be described similarly. Thus, contrary to the Court of Criminal Appeals's opinions in *Mosley* and *Martinez*, the Panel Opinion could be used as precedent to find argument error to be constitutional as a general rule, rather than as the rare exception. Once again, the Panel Opinion relies on cases holding the opposite of what the cases cited held as the basis for its decision. The Panel Opinion utilizes slender exceptions, rather than the holdings of the cases on which it relies, to reach its conclusion, another reach too far.

### Reversing Without Destroying the Jurisprudence

There is an easier way to accomplish the same result—reversing the case—without doing damage to the jurisprudence in the areas of both preservation of argument error and harmless-error analysis. Appellant raised a second point of error claiming that trial counsel was ineffective for not requesting an instruction to disregard so as to preserve the argument error properly. If a majority of this Court is inflamed by the complained-of portion of the prosecutor's argument so as to feel it was that argument that caused the jury to assess a maximum sentence in this case, then trial counsel was deficient in his representation for not having requested an instruction to disregard, and appellant was harmed because it was the prosecutor's remark about something he could not explain that resulted in the maximum sentence.

### Conclusion

Because of the many times the prosecutor urged the maximum sentence based on the evidence, I might have disagreed with a Panel Opinion that reversed this case on the basis of ineffective assistance of counsel. I would not have requested en banc consideration of this case over that disagreement on a judgment call, however. Because of the manner in which the Panel Opinion ventured into holdings undermining well-settled principles of preservation and harm, I did request en banc consideration. From the denial of that request, I respectfully dissent.