Opinion issued April 21, 2005



In The

# Court of Appeals
For The
## First District of Texas

---

NO. 01-04-00491-CR

---

PAULO CESAR SOLIS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 263rd District Court
Harris County, Texas
Trial Court Cause No. 927855

## MEMORANDUM OPINION

A jury found appellant, Paulo Cesar Solis, guilty of the offense of aggravated

assault[1] and assessed his punishment at confinement for 20 years. In three points of error, appellant contends that (1) the trial court erred in overruling his objections to the State's improper jury argument at the punishment phase of trial, (2) the trial court erred in denying his requests for a mistrial following allegedly improper cross-examination of appellant during the guilt phase of trial, and (3) the evidence was legally and factually insufficient to support his conviction. We affirm.

## Factual and Procedural Background

Daniel Maldonado, the complainant, testified that, at approximately 1:00 a.m. on August 17, 2002, he was outside the Los Primos bar near downtown Houston. He saw appellant, whom he knew as "Sapo," drive a Lincoln Navigator into the bar's parking lot. After appellant stopped the Navigator, Joe Jasso, the front seat passenger, exited the vehicle, approached the complainant, and started to fight with him. When the complainant saw appellant come towards him, he ran toward the front of the bar. The complainant then heard Jasso scream "shoot him," and, as the complainant turned, he saw appellant pull a gun from his waistband. The complainant opened the bar door, and he heard approximately eight to ten gun shots. Appellant followed the complainant into the bar and called out for the complainant, who was hiding inside the disk jockey booth. Appellant then left the scene. While

---

[1] TEX. PEN. CODE ANN. § 22.02(a)(2) (Vernon Supp. 2004–2005).

2

inside the bar, the complainant noticed that he had been shot in the foot. When police officers arrived, the complainant told them that appellant had shot him. After he was released from the hospital, the complainant explained to a police officer that appellant had shot him because of a fight that they had two months earlier.

The complainant's friend, Francisco Santibanez, also testified that, on the morning of August 17, 2002, while he was with the complainant outside the Los Primos bar, appellant drove up in a Lincoln Navigator with Jose Jasso in the passenger seat. According to Santibanez, after Jasso and the complainant got into a fight, appellant approached the complainant, the complainant broke free from Jasso, Jasso shouted "shoot him," and appellant pulled a gun, aimed at the complainant, and shot. As Santibanez ran for cover, he heard eight to nine shots.

Richard Olvera testified that, sometime after 2:00 a.m on the morning of August 17, 2002, three men, including appellant and Jasso, approached the complainant outside the Los Primos bar. Jasso attempted to grab the complainant, but the complainant got away. Olvera then heard gunshots and ran inside the bar, and the complainant followed him into the bar. As Olvera was hiding in the bar, he saw appellant enter the bar with a gun and call for the complainant. After appellant left the bar, Olvera and the complainant walked out of the bar and police officers arrived at the scene.

In his defense, appellant testified that he did not shoot the complainant. Appellant also presented two alibi witnesses who testified that appellant was with them during the early morning hours of August 17, 2002 at the time of the shooting.

**Improper Jury Argument**

In his first point of error, appellant contends that the trial court erred in overruling his objection to a portion of the State's jury argument in the punishment phase of the trial. Appellant argues that the following argument was improper and highly prejudicial because it encouraged the jury to speculate on matters outside of the record:

| [State]: | You also had the opportunity to consider what type of person this is. Well, we talked a little bit about his criminal history and some of the things he's done. You're entitled to consider how it is that this individual was a landscaper, managed to put down over $11,000 on cash on a Lincoln Navigator with a sticker price of over $50,000. |
|---|---|
| [Defense Counsel]: | Excuse me. Judge, I'm going to object to that again as not being material or relevant to any issue in this case. |
| [Trial Court]: | Well, it's part of the record, so it will be overruled. |
| [State]: | For punishment purposes, you're entitled to consider that. Where is he getting that kind of cash? As I— |

4

| | |
|---|---|
| [Defense Counsel]: | Excuse me. Judge, I object to that not being material or relevant. And she is encouraging the jury to speculate. |
| [Trial Court]: | It's overruled. |

. . .

| | |
|---|---|
| [State]: | You're entitled to ask yourselves the question, where is he getting that kind of cash? He goes in to buy some high dollar rims for his car at a sticker price of over $6,000, for wheels. Once again, ladies and gentlemen, where is he getting that kind of cash? I think everybody on this panel can leap—can take whatever conclusion you want out of that. But it's ridiculous for the defendant to say that he's mowing lawns, he's a landscaper yet has the kind of cash to throw down on those types of luxuries. |
| [Defense Counsel]: | Again, Judge, we object to counsel arguing outside the record and bringing—attempting to encourage the Jury to speculate on matters that are not material or relevant to any issue in this portion of the case. |
| [Trial Court]: | Well, it's overruled. Move on to something else. |

Appellant asserts that the above arguments were made to encourage the jury to speculate that he had obtained the funds for the purchase of his vehicle and rims for his vehicle through illegal means, but that there was no evidence in the record to

5

support such speculation.

The law provides for, and presumes, a fair trial free from improper argument by the State. *Long v. State*, 823 S.W.2d 259, 267 (Tex. Crim. App. 1991); *Thompson v. State*, 89 S.W.3d 843, 850 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). Permissible jury argument generally falls within one of four categories: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answer to argument of opposing counsel; and (4) pleas for law enforcement. *Thompson*, 89 S.W.3d at 850.

It has long been established that the State cannot use closing argument to get before the jury evidence that is outside the record and prejudicial to the accused. *Everett v. State*, 707 S.W.2d 638, 641 (Tex. Crim. App. 1986). Arguments referencing matters that are neither in evidence nor inferable from the evidence are usually "designed to arouse the passion and prejudices of the jury and as such are highly inappropriate." *Borjan v. State*, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990); *Thompson*, 89 S.W.3d at 850. However, the State is allowed wide latitude in drawing inferences from the evidence so long as the inferences are "reasonable, fair, legitimate and offered in good faith." *Shannon v. State*, 942 S.W.2d 591, 597 (Tex. Crim. App. 1996); *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988).

Here, the challenged arguments discussed evidence, some of which was

6

introduced by appellant, in the record.[2] At the time the State made the comments, the jury had been presented with evidence that appellant owned the expensive Navigator, that he had made a down payment on it, and that he had purchased expensive rims for it. The jury also heard evidence that appellant owned a landscaping business or was the general manager of a landscaping business, that appellant's take-home pay from this job averaged about $8,900 per month during the summer months, and that appellant's wife was also employed.

The State did not expressly argue that appellant had engaged in illegal activities in order to finance his purchase of the Navigator and its rims. However, in arguing for a more severe punishment, the State did imply that appellant had obtained the money for these purchases unlawfully, and that the jury was "entitled to consider" that in assessing his punishment. Because there is no evidence to show that appellant unlawfully obtained the money for these purchases, the State's implication was not a reasonable deduction from the evidence. Therefore, we conclude that the trial court erred in overruling appellant's objections to the State's jury argument. We consider

---

[2] State's witness Isaac Hernandez testified, after the trial court overruled appellant's relevance objection, that appellant made a down payment of $11,000 on his Lincoln Navigator. Mr. Hernandez also testified that the total purchase price of appellant's vehicle was approximately $50,000. Appellant's witness, Feliciano Davila, testified that appellant paid $6,3819.15 for his vehicle's rims. Appellant also introduced into evidence a receipt of appellant's purchase of his rims.

the State's comments, like most comments that fall outside the areas of permissible jury argument, to be nonconstitutional error. *Martinez v. State*, 17 S.W.3d 677, 692 (Tex. Crim. App. 2000). We must now evaluate this error under rule 44.2(b), which provides that "nonconstitutional error that does not affect substantial rights must be disregarded." TEX.. R. APP. P. 44.2(b). We will affirm the judgment of the trial court if we have "fair assurance that the error did not influence the jury or had but a slight effect." *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). Determining whether the non-constitutional error affected appellant's substantial rights requires us to consider (1) the severity of the misconduct, (2) curative measures, and (3) the certainty of the punishment absent the misconduct. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).

As to the severity of the misconduct, we find that any prejudicial effect of the State's comments was minimal because the comments were based on facts in the record. The State did not attempt to interject specific unsupported facts about appellant or expressly accuse appellant of engaging in unrelated illegal activities. Additionally, even though the State's improper argument occurred at the punishment phase, appellant had previously addressed the evidence concerning the cost of his vehicle and rims in his jury argument at the guilt phase of the trial by arguing that such evidence was irrelevant, that appellant worked for his money, that, at most,

8

appellant was a "wasteful spender," and that the evidence concerning appellant's spending habits was nothing more than a "rabbit trail" offered by the State to account for an otherwise weak case. We conclude that the severity of the misconduct from the State's implication that appellant had unlawfully obtained the money for his purchases was minimal.

As to the second factor, the trial court overruled appellant's objections. However, the trial court's charge specifically instructed the jury that in assessing appellant's punishment, it could consider evidence of an extraneous crime or other bad act "only if the extraneous crime or bad act has been shown by the State *beyond a reasonable doubt* to have been committed by the defendant or is one for which the defendant could be held criminally responsible." Absent evidence to the contrary, we presume that the jury followed this instruction. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996).

Finally, in addressing the certainty of appellant's punishment absent the misconduct, we must examine the entire proceeding, including all the evidence presented during the punishment phase. Because the jury found the allegation in the enhancement paragraph that appellant had previously been convicted of a felony offense to be true, he faced a punishment by confinement of not less than five years nor more than ninety-nine years or life. TEX. PEN. CODE ANN. §§ 12.33 (Vernon

9

2003), 22.02(a)(2) (Vernon Supp. 2004-2005).

During the punishment phase, the State presented evidence of defendant's prior conviction of the felony offense of auto theft. The State also presented evidence that the appellant had been charged with driving while intoxicated. Appellant presented the testimony of his wife, who testified, among other things, that appellant served as a provider for his two children. Appellant also disputed the merit of his DWI charge. In its jury argument during the punishment phase, the State focused on the dangerousness of the crime of which appellant had been convicted and emphasized that the evidence established that appellant fired multiple shots in a crowded parking lot, that he hit the complainant and another person, and that he followed the complainant into a crowded bar brandishing a gun. The State requested a sentence of 25 to 35 years and appellant requested a punishment of no more than five years. Given the evidence of the severity of appellant's actions in committing the offense and his prior felony conviction, we conclude that any impact of the State's improper punishment argument on the jury's assessment of punishment, confinement for 20 years, was negligible.

Accordingly, considering that the State's comments, when taken in context, were not severe, and considering the court's charge regarding extraneous offenses, the other evidence before the jury, and the negligible impact of the State's improper

10

comments on the jury, we further conclude with fair assurance that the trial court's error in overruling appellant's objection to the State's punishment argument did not influence the jury or had but a slight affect, and thus such error should be disregarded.

We overrule appellant's first point of error.

## Request for Mistrial

In his second point of error, appellant contends that the trial court erred in denying his requests for a mistrial during the guilt phase of trial. Appellant made the requests during the State's cross-examination of appellant, when the State asked appellant (1) if he had paid $55,000 for the Navigator, (2) if he would agree to the approximate price of the vehicle, and (3) if he would agree that he put some cash down on the vehicle. In response to the first question, appellant answered that he bought the vehicle on credit. Appellant did not answer the second and third questions, as appellant timely and specifically objected to them on grounds of relevance, and the trial court sustained his objections. The trial court also instructed the jury to disregard the State's questions.

We review a trial court's denial of a motion for mistrial for an abuse of discretion. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). A trial court may declare a mistrial when an error occurs that is so prejudicial that the expenditure of further time and expense would be wasteful. *Wood v. State*, 18 S.W.3d 642, 648

11

(Tex. Crim. App. 2000). Improper evidence will seldom call for a mistrial because any harm can usually be cured by an instruction to disregard. *Id.*

Pursuant to the appellant's request, the trial court instructed the jury to disregard the State's questions, and we presume the jury complied with this instruction. *Wesbrook v. State*, 29 S.W.3d 103, 116 (Tex. Crim. App. 2000). During a bench conference, the trial court also told the State that its questioning "had nothing to do with this case" and instructed it to "move on." "Only offensive or flagrant error warrants reversal when there has been an instruction to disregard." *Id.*; *see also Gardner v. State*, 730 S.W.2d 675, 696-97 (Tex. Crim. App. 1987). In this case, the error was not so offensive or flagrant that the trial court's instruction was ineffective, and thus we hold that any possible error was cured by the trial court's instructions and that the trial court did not err in denying appellant's motions for mistrial.[3]

We overrule appellant's second point of error.

## Legal and Factual Sufficiency

In his third point of error, appellant contends that the evidence was legally and factually insufficient to support the jury's guilty verdict. We review a challenge to

---

[3] We also note that while the trial court prohibited the State from questioning the appellant about the price of his vehicle and the amount of appellant's down payment, other witnesses presented testimony on these facts.

12

the legal sufficiency of the evidence by viewing the evidence in the light most favorable to the verdict to determine if any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). In a legal sufficiency review, we may not substitute our own judgment for that of the fact finder. *Id.*

We review a challenge to the factual sufficiency of the evidence by examining all of the evidence neutrally, not in the light most favorable to the verdict, and we will set aside the verdict "only if the evidence is so weak that the verdict is clearly wrong or manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met." *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004); *see also Johnson v. State*, 23 S.W.3d 1, 6-7 (Tex. Crim. App. 2000). Although our analysis considers all the evidence presented at trial, the trier of fact is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to their testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination concerning what weight to give contradictory testimonial evidence because the jurors were in attendance when the testimony was delivered. *Johnson*, 23 S.W.3d at 8.

A person commits the offense of aggravated assault if the person intentionally

13

or knowingly causes bodily injury to another and he uses and exhibits a deadly weapon during the commission of the assault. TEX. PEN. CODE ANN. § 22.02(a)(2) (Vernon Supp. 2004-2005).

Here, appellant testified that he was not present at the Los Primos bar on the morning of August 17, 2002 and did not shoot the complainant. Appellant also presented two alibi witnesses who testified that appellant was with them at another bar at the time of the shooting. However, the complainant identified appellant as the shooter to police officers shortly after the incident and two days later when he again met with a police officer. Two other witnesses also identified appellant as the shooter. Santibanez testified that appellant approached the complainant outside the bar and that appellant pulled a gun and shot toward the complainant. Olvera testified that three men, including appellant, approached the complainant, that he then heard gunshots and ran inside the bar and the complainant followed right behind him. Olvera also testified that, when he was hiding in the bar, he saw appellant enter the bar with a gun and call for the complainant.

Thus, the jury was presented with the testimony of three witnesses that appellant was the person who shot at complainant on the morning of August 17, 2002. The jury may simply have found appellant's testimony and the testimony of his alibi witnesses not credible. The jury, as the trier of fact, was the sole judge of the

14

credibility of these witnesses and was free to accept or to reject all or part of the their testimony. *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). It was the "exclusive province of the jury" to reconcile the conflicting testimony. *Wesbrook*, 29 S.W.3d at 111.

Considering this evidence, a rational fact finder could have found, beyond a reasonable doubt, that appellant committed the felony of aggravated assault. Thus, we hold that the evidence was legally sufficient to support appellant's conviction. Additionally, viewing all of the evidence neutrally, we conclude that the evidence was not so weak that the verdict was clearly wrong or manifestly unjust and that the contrary evidence was not so strong that the standard of proof beyond a reasonable doubt could not have been met. Accordingly, we hold that the evidence was factually sufficient to support appellant's conviction.

We overrule appellant's third point of error.

## Conclusion

We affirm the judgment of the trial court.


Terry Jennings
Justice

Panel consists of Justices Nuchia, Jennings, and Alcala.


Do not publish. TEX. R. APP. P. 47.2(b).