**Thomas Ray STEELE, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–99–250–CR.**

Court of Appeals of Texas,
Fort Worth.

March 23, 2000.

Discretionary Review Refused
Sept. 27, 2000.

Earl R. Waddell, III, Fort Worth, for Appellant.

Tim Curry, Crim. Dist. Atty., Charles M. Mallin, Asst. Crim. Dist. Atty. and Chief of the Appellate Div., Helen F. Faulkner, John J. Cope, David Hagerman,

Asst. Dist. Attys., Fort Worth, for Appellee.

PANEL B: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

## OPINION

DIXON W. HOLMAN, Justice.

Appellant Thomas Ray Steele appeals his conviction for the offense of aggravated robbery with a deadly weapon. Appellant pled guilty and a jury sentenced him to ninety-nine years' confinement. In a single point, Appellant complains that despite his guilty plea, the evidence the jury heard fairly raised the issue of his innocence, and therefore, the trial court erred by not withdrawing Appellant's plea of guilty *sua sponte*. We affirm Appellant's conviction.

## BACKGROUND

On March 10, 1998, Appellant entered a Winn–Dixie supermarket. He presented Rani Stom, a cashier at the store, a check payable to Winn–Dixie in the amount of $60.45. Appellant wanted to cash the check in order to purchase a carton of cigarettes with the proceeds. The cashier became suspicious of Appellant's identification and took the check and the identification to the store manager for approval.

The manager called the telephone number printed on the face of the check, learned that the check had been stolen, and that Appellant had no authority to cash it. The manager asked Appellant to accompany him to the store office. Appellant refused and started to leave. Appellant resisted when store employees tried to detain him, and a struggle ensued. Appellant threatened the employees with a knife during the struggle and then fled in a car.

## THE INDICTMENT

The indictment charges that Appellant: INTENTIONALLY OR KNOWINGLY, WHILE *IN THE COURSE OF COMMITTING THEFT* OF PROPERTY AND WITH INTENT TO OBTAIN ...

SAID PROPERTY AND THREATEN[ED] OR PLACE[D] [VICTIM'S NAME] IN FEAR OF IMMINENT BODILY INJURY OR DEATH AND THE DEFENDANT DID THEN AND THERE USE OR EXHIBIT A DEADLY WEAPON ... A KNIFE, THAT IN THE MANNER OF ITS USE OR INTENDED USE WAS CAPABLE OF CAUSING DEATH OR SERIOUS BODILY INJURY.... [Emphasis added.]

*See* TEX. PENAL CODE ANN. § 29.03 (Vernon 1994) (defining aggravated robbery).

There was no trial on guilt-innocence because the trial court accepted Appellant's plea of guilty and then instructed the jury to find him guilty as charged in the indictment, which, for enhancement purposes, alleged that Appellant had previously been finally convicted of two felony offenses. In its charge on punishment, the court instructed the jury to answer "true" to the indictment's enhancement notice, paragraph one, and habitual offender notice, paragraph one, and to set his punishment at either life in prison or any term of years from twenty-five to ninety-nine. The jury chose ninety-nine years.

## ISSUE

The sole issue is whether the evidence heard by the jury reasonably and fairly raised a question of Appellant's innocence so that the trial court, *sua sponte*, should have withdrawn his guilty plea and replaced it with a plea of not guilty. Appellant contends that he cannot be guilty as charged in the indictment because the evidence shows that he never possessed any property belonging to Winn–Dixie, and he did not use his knife in an attempt to gain control of any property.

■ To offset possible pressures that might lead an innocent person to voluntarily plead guilty before a jury and upon the plea be convicted of a felony the pleader did not commit, our courts adhere to the rule that if the trial's evidence reasonably

and fairly raises the issue of the accused's innocence, and the accused does not withdraw the evidence of innocence, the trial court *sua sponte* must withdraw the accused's guilty plea and replace it with plea of not guilty. *See Griffin v. State*, 703 S.W.2d 193, 195 (Tex.Crim.App.1986) (op. on reh'g). This is true even though the defendant makes no effort during the trial to withdraw the plea of guilty, makes no objection to the court's charge instructing the jury to render a verdict of guilt, and even though the defendant's testimony shows him to be guilty of the offense. *See Montalvo v. State*, 572 S.W.2d 714, 715–16 (Tex.Crim.App. [Panel Op.] 1978).

██ Nevertheless, to require a trial court's *sua sponte* withdrawal of the guilty plea, the evidence at trial must do more than merely tend to raise a defensive issue. *See Griffin*, 703 S.W.2d at 197; *Jones v. State*, 634 S.W.2d 61, 62 (Tex.App.—Fort Worth 1982, pet. ref'd). The purpose of the *sua sponte* plea-withdrawal rule is to help insure that guilty pleas are voluntarily and knowingly given. *See Griffin*, 703 S.W.2d at 197. Appropriately, the trial court has the sound discretion to make that determination. *See id.* Accordingly, whether the issue of Appellant's innocence was reasonably and fairly raised at his trial will require us to consider whether the trial court abused its discretion. *See id.* We will make that evaluation "in light of [the case's] unique circumstances and the offense charged," by reviewing all of the evidence and applying a "totality of the circumstances test." *Id.*

## THE EVIDENCE

Several people who were Winn–Dixie employees at the time and place of the alleged aggravated robbery offense testified before the jury in the punishment phase of the trial. Rani Stom had been the store's cashier. She testified that Appellant handed her false identification with a $60.45 check, represented that he was its payor, and told her to cash it. Appellant instructed Stom to give him a carton of cigarettes, to deduct the cost from the check proceeds, and to give him the remaining proceeds in cash. The store's check verification procedure determined that the check did not belong to Appellant but was a check stolen with several hundred other blank checks from the checkbook of a woman named Shirley Fyvie. During the check verification procedure, a store employee entered a "Code 13" call on the store's loudspeaker. Stom testified that a "Code 13" alarm means "someone is trying to steal." Anthony Applebee was a produce handler on duty in the store's produce department when the alleged aggravated robbery occurred. The indictment names Applebee as one of Appellant's victims in the aggravated robbery. Applebee testified that during the alleged offense, he heard the "Code 13" announcement on the store's loudspeaker and hurried to Stom's cashier counter, where Appellant was engaged in a physical struggle with the store's customer service manager, Jason Wilson. Applebee grabbed Appellant from behind and heard someone say "he's got a knife."

Applebee saw the knife and estimated that its blade was six inches long. Applebee retreated as Appellant swung the knife, because Applebee was concerned that the knife would cause him serious bodily injury or kill him. Before the jury, Applebee identified Appellant as the person who swung the knife and with whom he struggled. When the struggle ended, both Applebee and Appellant ran out of the store. Applebee watched Appellant run toward a car but did not see where he went after that. Wilson's testimony about the struggle and the knife was consistent with Applebee's. Wilson described the knife as having a six-inch blade, capable of causing death or serious bodily injury in the manner in which Appellant used it during the struggle. Wilson told the jury his shoulder cartilage was torn during the struggle with Appellant and Wilson later had surgery for that injury.

James Langley, a special agent of the Federal Bureau of Tobacco, Alcohol, and Firearms (ATF), testified that during the time he was spending as an undercover agent, about two weeks after the aggravated robbery involved in this case, he met with Appellant about an unrelated matter. Unaware that Langley was a federal law enforcement officer, Appellant began to brag about Appellant's recent robbery of a store, demonstrating with a knife how he had used it in the robbery and saying that he was challenged by three people during the incident and "threw one of them off of him." Langley testified that Appellant said that he went out and got in his car and he could hear the police coming, so he drove out of the parking lot, went around several blocks, then back to a parking lot across the street from the store and watched the police from his car. Langley immediately reported the details of the conversation to robbery investigators at the Fort Worth Police Department. Langley identified Appellant before the jury.

Mark Demas, an undercover ATF officer who was present during the conversation between Langley and Appellant at a "covert location," identified Appellant before the jury, named the other persons who were present at the site during the conversation, and testified that Appellant said:

[Demas:] that he had committed a robbery, that he had gone into a store and as he was attempting to leave, they tried to stop him. He pulled a knife on them. Some of the employees tried to stop him and he threw one of them off, pulled a knife and threatened them with the knife. At that time, the police were called and when he heard the police come, got in his car and drove and hid from the police.

. . . .

[Demas:] . . . [H]e actually got up and reenacted it in front of us, to show us how he had done this. That was record-ed on videotape on the covert cameras that we had."

Without objection from Appellant, the videotape was admitted into evidence as State's Exhibit 8 and was played for the jury, with Demas providing the jury an unobjected-to narration about the content of the tape they were watching in court.

## DISCUSSION AND CONCLUSION

■ By statutory definition, theft is completed when an accused *unlawfully* appropriates property with intent to deprive the owner of it. *See* Tex. Penal Code Ann. § 31.03(a) (Vernon Supp.2000). For the penal code's purposes, the legislature has defined the word *unlawful* as conduct that would be *criminal or tortious* in the absence of some applicable defense. *See id.* § 1.07(a)(48) (Vernon 1994). The code's definition of *unlawful* applies to each of that word's grammatical variations, such as the variation contained in section 31.03(a), where the word *unlawfully* is a generic characterization of the *methods* offenders use to commit the statutory offense of theft ("[a] person commits [theft] if he unlawfully appropriates property with intent to deprive the owner of property"). Effective September 1, 1994, the legislature added this to the penal code:

§ 31.02. **Consolidation of Theft Offenses.**

Theft as defined in Section 31.03 constitutes a single offense superseding the separate offenses previously known as theft, theft by false pretext, conversion by a bailee, theft from the person, shoplifting, acquisition of property by threat, swindling, swindling by worthless check, embezzlement, extortion . . . and receiving or concealing stolen property.

*Id.* § 31.02 (Vernon 1994).

■ When the evidence shows that a person has attempted to commit theft of property in the context of section 31.03 by issuing or passing a check drawn on a bank in which the person had no account at the time of the offense, that conduct is prima facie evidence of the accused's in-

tent under section 31.03 to commit theft that deprives the owner of the property. *See id.* § 31.06(a)(1) (Vernon Supp.2000). The State also may prove the accused's requisite intent by direct evidence. *See id.* § 31.06(d) (Vernon Supp.2000).

■ Here, Appellant was indicted for aggravated robbery intentionally committed *in the course of committing theft,* which the legislature's definition equates to an *attempted* theft, not a completed theft. *See id.* § 29.01(1) (Vernon 1994). The evidence shows that Appellant's method of attempting to appropriate Winn–Dixie's cigarettes and cash with intent to deprive the store of that property was to use a stolen check (without permission from its owner) as a sham medium of exchange and to facilitate the worthless check with false identification.

■ The evidence shows that conduct by Appellant was *criminal or tortious,* done for the purpose and with the intent of committing theft of Winn–Dixie's property, and consequently *unlawful* within the meaning of sections 1.07(a)(48) and 31.03(b)(1). Only the timely interventions of Winn–Dixie's employees prevented Appellant's consummation of the theft, and because he used or exhibited a deadly weapon, placing one or more of those employees in fear of serious bodily injury or death, during the immediate flight from his attempted theft, Appellant's crime became aggravated robbery. *See id.* § 29.03.

Although Appellant contends that the evidence fails to carry the State's burden under the indictment to prove that Appellant used the knife while acting with the intent to obtain or maintain control of property belonging to Winn–Dixie or a third party, his brief even concedes that he "may have committed an *attempted* theft." (Emphasis added). The evidence plainly establishes that Appellant did commit an attempted theft and that his assaultive act with the knife occurred immediately after the attempted theft, during his efforts to

flee. Consequently, it is irrelevant that his attempt to obtain control of Winn–Dixie's cigarettes and cash without lawfully paying had already been thwarted by the time he pulled and used the knife or that when he used the knife he may have already abandoned the theft component of his attempted robbery. *See Lawton v. State,* 913 S.W.2d 542, 552 (Tex.Crim.App.1995), *cert. denied,* 519 U.S. 826, 117 S.Ct. 88, 136 L.Ed.2d 44 (1996). The statutory element of "intent to obtain ... control of the property" deals with the robber's state of mind regarding the property involved in the attempted theft, and not his state of mind in the assaultive component of the offense of aggravated robbery. *White v. State,* 671 S.W.2d 40, 42 (Tex.Crim.App. 1984).

On the facts of this case, the State was not required to prove that Appellant had the intent to obtain or maintain control of Winn–Dixie's cigarettes and cash at the time he engaged in the assaultive conduct with a deadly weapon. *See Lawton,* 913 S.W.2d at 552. The State met its burden to prove that Appellant used his knife to threaten or place victim Applebee in fear of imminent bodily injury or death during Appellant's flight from the scene of his attempted theft. *See* TEX. PENAL CODE ANN. § 29.01(1).

After carefully reviewing all of the evidence in the totality of the circumstances of this case and the offense charged, it is clear that the evidence did not reasonably and fairly raise the issue of Appellant's innocence of the charge that he used a deadly weapon during his immediate flight from the scene of his attempted theft where he had intended to unlawfully obtain control of a carton of cigarettes and some cash belonging to the store. The evidence establishes that Appellant's plea of guilty was voluntarily and knowingly made, which is the specific purpose of the rule Appellant asks us to apply. *See Griffin,* 703 S.W.2d at 197. Accordingly, the trial court did not abuse its discretion by not *sua sponte* withdrawing Appellant's

guilty plea and replacing it with a plea of not guilty. We affirm the trial court's judgment.

DAUPHINOT, J. filed a dissenting opinion.

LEE ANN DAUPHINOT, Justice, dissenting.

I respectfully dissent to the majority's holding that attempting to pass a forged check constitutes theft under chapter 31 of the penal code. The majority correctly states that issuing or passing a check drawn on a bank in which the person had no account constitutes theft, but only if it purports to be his own act and not the act of another. That is, if a person issues a check drawn on an account which he has closed or in which he has insufficient funds or if he stops payment on a check, his conduct falls within the ambit of section 31.03, the theft statute, and may have satisfied the intent element through the presumptions of theft by check established in section 31.06.[1] If, however, the writing purports to be the act of another who did not authorize the act, then the conduct falls under the forgery statute, section 32.21.[2]

The facts of this case do not reveal that Appellant attempted theft by check. The record indicates that Appellant attempted to pass a check on the account of Duane Fyvie or Shirley Fyvie that bore the signature "Duane Fyvie." Duane Fyvie did not testify at trial. Shirley Fyvie testified that someone had stolen 500 checks out of their mailbox and was "writing checks on us." She also testified that she had not authorized anyone to write the check in question. These facts establish that Appellant committed the offense of forgery, not theft by check.[3]

The legislature has defined theft and has separately defined forgery.[4] They are two distinct offenses. Theft offenses have been consolidated under chapter 31 of the penal code. Conversely, forgery is a chapter 32 fraud offense. Robbery is an assaultive offense that the legislature has specifically limited to chapter 31 theft offenses:

A person commits [robbery] if, in the course of committing *theft as defined in Chapter 31* and with intent to obtain or maintain control of the property, he:

(1) intentionally, knowingly, or recklessly causes bodily injury to another; or

(2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.[5]

There is no evidence Appellant committed a chapter 31 theft offense. Additionally, there is no evidence of who would bear the loss once the check is passed. Although there is evidence that someone stole the checks from the Fyvies' mailbox before Appellant attempted to pass the check, the State did not attempt to prove Appellant committed that theft, nor did the State attempt to prove theft of stolen property. Further, I do not believe that the robbery statute is broad enough to include threats of bodily injury or death at all times a person is in possession of stolen property.

We have before us some evidence of forgery by either uttering or possessing with intent to utter a forged writing that purports to be the act of Duane Fyvie with intent to defraud or harm another.[6] There is no evidence Duane Fyvie did not authorize the act, but Appellant has not raised that issue. Appellant's conduct falls squarely within the forgery statute and

---

**1.** *See* TEX PENAL CODE ANN. §§ 31.03, 31.06 (Vernon Supp.2000).

**2.** *See id.* § 32.21.

**3.** *See id.*

**4.** *See id.* §§ 31.03, 32.21.

**5.** *Id.* § 29.02(a) (Vernon 1994) (emphasis added).

**6.** *See id.* § 32.21(a)-(b).

does not constitute a chapter 31 offense. When, as in this case, a statute governs the legal issue, we apply the plain meaning of the statute's language, unless its application is ambiguous or would lead to an absurd result.[7] The plain meaning of the robbery statute is that it applies only to chapter 31 offenses. Consequently, the legislature has decreed that Appellant's offense does not constitute robbery.

I agree that there is ample evidence that Appellant threatened bodily injury or death and that he used and exhibited a deadly weapon. I cannot, however, square the majority's analysis of theft with the clear intent of the legislature. For these reasons, I would hold that the trial court erred in failing to sua sponte withdraw the plea. I respectfully dissent to the scholarly and compelling opinion of the majority.

**7.** *See Ex parte Serrato,* 3 S.W.3d 41, 42 (Tex. Crim.App.1999).