COURT OF
APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-01-346-CR
 
CHARLES HIAWATHA MONTGOMERY       
           
           
           
    APPELLANT
V.
THE STATE OF TEXAS       
           
           
           
           
           
    STATE
------------
FROM THE 16TH DISTRICT COURT OF DENTON
COUNTY
------------
OPINION
------------
Appellant Charles Hiawatha Montgomery
appeals from his conviction for the offense of aggravated assault with a deadly
weapon. The indictment charged that, on or about January 27, 2001, Appellant
"did . . . intentionally or knowingly threaten Margaret Garrett with
imminent bodily injury and did then and there during the commission of said
assault, use or exhibit a deadly weapon, to-wit: a firearm." The charge was
enhanced by Appellant's two prior felony convictions.
Appellant pled guilty and pled true to one
of the enhancement paragraphs, and the State abandoned the other paragraph.
Appellant elected to have a jury assess his punishment. The jury was instructed
to find Appellant guilty of aggravated assault as charged in the indictment and
to consider a punishment range of five to ninety-nine years, or life, and an
optional fine not to exceed $10,000. The jury sentenced him to thirty years'
confinement and a $3,000 fine.
In two points, Appellant complains that,
despite his guilty plea, the evidence the jury heard fairly raised the issue of
his innocence, and therefore, the trial court erred by not sua sponte
withdrawing Appellant's guilty plea and by instructing the jury to find
Appellant guilty. We affirm Appellant's conviction.
Background
Appellant and Margaret Garrett, the
complaining witness, were not married, but had lived together in an apartment
for approximately nine months. In their bedroom, they kept a pistol in a
compartment in the headboard of their bed. On January 27, 2002, a
Carrollton 911 dispatcher called Garrett after someone at that phone number had
called 911 and hung up. Garrett told the dispatcher that Appellant had pulled a
gun on her.
Carrollton Police Officer Eric Kurz testified that he went to Appellant and
Garrett's apartment after receiving a call that a man had pulled a gun on his
spouse. Officer Kurz was given a description of Appellant's vehicle. When
Officer Kurz arrived at the apartment, he did not see Appellant's vehicle, so he
spoke with Garrett, who was upset, scared, and crying. Appellant had already
left. Garrett told Officer Kurz that
Appellant had consumed about twenty-four beers and had then brought out a gun
that was usually kept in the bedroom of the apartment. Officer Kurz stated that
he could not locate the gun in the apartment.
Officer Kurz completed the investigation
and was sitting outside in his squad car when he saw Appellant's vehicle pass
him and park in the parking lot. Officer Kurz approached Appellant, who was in
the passenger's seat, and arrested him. Officer Kurz asked Appellant where the
gun was located, and Appellant "wouldn't say. He just said he didn't have
it." Officer Kurz also asked the driver of the vehicle, R.C. Harris, where
the gun was. Harris informed Officer Kurz that Appellant had told him that he
had thrown the gun away. Officers searched for the gun, but could not find it.
The next day Officer Kurz went to Appellant and Garrett's apartment to look for
the gun, and he spoke with Garrett. Officer Kurz said Garrett behaved
differently towards him, but she never changed her story of the events of the
night of the offense.
 Issue One
Appellant complains in his first issue
that the trial court erred by not sua sponte withdrawing his guilty
plea and replacing it with a plea of not guilty because evidence heard by the
jury reasonably and fairly raised a question of his innocence. More
specifically, Appellant claims that the evidence did not show that Appellant
possessed a gun during the assault. Appellant further contends that if any
offense was committed, it was that of the lesser included offense of deadly
conduct. Tex. Penal Code Ann. § 22.05 (Vernon 1994). We disagree.
The Law
This court has long followed the rule that
when the evidence fairly and reasonably raises an issue as to the innocence of
the accused, a trial court must sua sponte withdraw a defendant's
guilty plea and enter a plea of not guilty. Burke v. State, 80 S.W.3d
82, 96 (Tex. App.--Fort Worth 2002, no pet.) (op. on reh'g) (citing Montalvo
v. State, 572 S.W.2d 714, 715-16 (Tex. Crim. App. [Panel Op.] 1978)); Steele
v. State, 22 S.W.3d 550, 552-53 (Tex. App.--Fort Worth 2000, pet. ref'd).
The trial court must make such a withdrawal even though the defendant makes no
effort during the trial to withdraw his guilty plea,
makes no objection to the court's charge instructing the jury to render a
verdict of guilty, or testifies and shows himself to be guilty of the charged
offense. Burke, 80 S.W.3d at 96; Steele, 22 S.W.3d at 553.
This requirement offsets possible pressures that might lead an innocent person
to voluntarily plead guilty before a jury and upon the plea be convicted of a
felony the pleader did not commit. Steele, 22 S.W.3d at 552; see
Griffin v. State, 703 S.W.2d 193, 195 (Tex. Crim. App. 1986) (op. on reh'g).
The purpose of the sua sponte
plea-withdrawal rule is to help insure that guilty pleas are voluntarily and
knowingly given. See Griffin, 703 S.W.2d at 197. The trial court has
the sound discretion to make that determination. See id. Accordingly,
whether the issue of Appellant's innocence was reasonably and fairly raised at
his trial will require us to consider whether the trial court abused its
discretion. See id. We will make that evaluation "in light of [the
case's] unique circumstances and the offense charged," by reviewing all of
the evidence and applying a "totality of the circumstances test." Id.
at 196.
The State argues that, under Texas Rule of
Appellate Procedure 33.1 and decisions of the Eastland and Waco Courts of
Appeals, Appellant has waived his right to complain about the voluntariness of
his plea because Appellant did not properly preserve error by requesting,
objecting, or filing a motion for new trial claiming that his plea was
involuntary. See Tex. R. App. P. 33.1; Mendez v. State, 42
S.W.3d 347, 348 (Tex. App.--Eastland 2001), pet. granted, No. 01-0817
(Tex. Crim. App. Sept. 12, 2001) (granting petition on the issue of whether rule
33.1, "requiring contemporaneous objection to preserve all non-structural
appellate error[,] has overruled thirty years of court opinions requiring the
trial court to sua sponte withdraw a guilty plea before a jury when evidence of
innocence is adduced before that jury and not withdrawn"); Williams v.
State, 10 S.W.3d 788, 789 (Tex. App.--Waco 2000, pet. ref'd).
Unlike the Eastland and Waco courts, this
court has never required an Appellant to preserve this complaint for appeal. See
Burke, 80 S.W.3d at 96; Steele, 22 S.W.3d at 552-53. Both
Appellant and the State acknowledge the split of authority among the courts of
appeals as to whether rule 33.1 applies when an appellant is claiming that the
trial court should have withdrawn a guilty plea sua sponte, and the
State urges us to follow Mendez and Williams. We decline to do
so and instead continue to follow Burke and Steele.
The Evidence
The tape of Garrett's conversation with
the 911 dispatcher was admitted into evidence and played for the jury, without
any objection from Appellant. Garrett said at one point that even though she
could not see the gun while she was talking to the dispatcher, it was loaded and
Appellant still had it in his possession. Garrett told the dispatcher that
Appellant was intoxicated. Garrett also said that Appellant was not going to
hurt her anymore. The dispatcher heard Garrett tell Appellant that she was
"not trying to get [Appellant] in trouble. [She didn't] want to be
hurt." In one portion of the 911 tape, Appellant spoke with the dispatcher.
The conversation was as follows:

 THE DISPATCHER: What's been going on
 tonight? Can you tell me?
 THE DEFENDANT: Nothing. I had been --
 hadn't been trying to hurt [Garrett].
 THE DISPATCHER: You haven't?
 THE DEFENDANT: No.
 THE DISPATCHER: Do you have a gun,
 [Charles]?
 THE DEFENDANT: Do I have a gun?
 THE DISPATCHER: Uh-huh.
 THE DEFENDANT: No.
 THE DISPATCHER: You don't have a gun?
 THE DEFENDANT: No, I'm an ex-felon.

Garrett testified that she and Appellant
had been arguing all day on the date of the charged offense. Appellant went into
the bedroom and came out a few seconds later holding the gun up in the air and
talking wildly. At one point, Garrett said she and Appellant continued to argue,
and Appellant "got [the gun] up in his hand" and said, "I [will]
pistol-whip you." At another point, Garrett said she could not remember
whether Appellant was holding the gun or if it was in the waistband of his pants
when he threatened to pistol-whip her. Garrett decided to call the police
because Appellant was intoxicated and had the gun. Garrett testified as follows:

 Q. Did he just out of the blue tell you,
 hey, I'm going to pistol-whip you?
 A. No. It was in response to something I
 said, I'm sure.
 Q. What did you say?
 A. That's just it, I don't know the
 entire conversation. He said, I will pistol-whip you. It was more in reference
 as he was also saying things like nobody will hurt me and in -- and that kind
 of thing. And what I was thinking was that it was something going on outside,
 honestly. I thought it was something going on outside that he was angry about.
 Q. Was he making any sense to you?
 A. No, he was not.

Garrett mentioned the pistol-whipping
threat for the first time at trial.
Garrett's written statement to police
regarding the events of the night of the offense was also introduced at trial.
It reads as follows:

 Charles Montgomery pulled his gun and
 told me that he had no problem with hurting me. He would die first. I was
 sitting on the couch [and] he pulled out his gun and told me he wasn't afraid.

Garrett sent two electronic mail messages
(e-mails) to the Denton County District Attorney's office in which she wrote
that she personally did not want to prosecute Appellant and specifically
mentioned that Appellant did not have a gun on the night of the charged offense.
She sent one of the e-mails before the grand jury convened and sent the other
afterward. In one of the e-mails, State's Exhibit 7, Garrett wrote:

 [Appellant] was drunk and that is all[.]
 [W]e were not in any type of argument[.] [H]e frightened me by talking about a
 gun and going to his waste [sic] with what I thought was a gun[,] only later
 to find [it] was a bottle of liquor which I have repeatedly told you all.

Garrett testified at trial that the
statements she made in those e-mails were false and that Appellant indeed did
have a gun. Her testimony was as follows:

 Q. And did -- why did you say there was
 no gun involved?
 A. Because at that point, although I
 know the situation had gotten out of hand, because I didn't feel there was a
 general threat to my life, I knew how the State of Texas would look at it. And
 because if there was anything in my power that I could do to get the truth
 out, and that you would know that he didn't try and hurt me, he did have the
 gun, that I wanted the truth to be told and I didn't want him to be looked at
 as a -- the truth. Just wanted you to know the truth.
 Q. Now, those e-mails, they weren't the
 truth, were they?
 A. No, sir, they were not.
 . . . .
 Q. But while we're here in front of --
 in front of the jury, it is true that Mr. Montgomery had a gun?
 A. Yes, sir, that is true.
 Q. And is it also true Mr. Montgomery
 said to you he wasn't afraid to hurt you?
 A. He did speak those words, sir.

Discussion
A person commits the offense of aggravated
assault when he "commits assault as defined in Section 22.01 and the person
uses or exhibits a deadly weapon during the commission of the
assault." Tex. Penal Code Ann. § 22.02(a)(2) (emphasis added). A person
commits assault when he "intentionally or knowingly threatens another with
imminent bodily injury, including the person's spouse." Id. §
22.01(a)(2) (Vernon Supp. 2003).
After carefully reviewing all of the
evidence under the totality of the circumstances of this case and the offense
charged, we find that the evidence did not reasonably and fairly raise the issue
of Appellant's innocence of the charge that he used a deadly weapon during his
assault of Garrett. See Steele, 22 S.W.3d at 552-53. Regardless of
whether Appellant was holding the gun, pointing it at Garrett, or simply
displaying it in the waistband of his pants, the evidence clearly shows that
Appellant had a gun and was exhibiting it while he threatened to harm Garrett,
in violation of the statute. See id. §§ 22.01, 22.02.
Appellant contends that the two e-mails
Garrett sent to the Denton County District Attorney's office raised an issue as
to whether he had a gun. Garrett specifically testified at trial, however, that
those e-mails were false, and the record supports her testimony.
Appellant also contends that the issue of
his innocence was raised when the 911 dispatcher asked Garrett, "Did
[Appellant] pull a pistol on you?" and Garrett replied, "Yes, ma'am,
but I'm okay." He claims that Garrett's affirmative response may have
implied that Appellant was waving a gun at her, but did not imply that Appellant
had ever pointed the gun at her. (1)
This argument is not indicative of Appellant's innocence, because the offense of
aggravated assault can be committed not only by pointing a deadly weapon, but
also by exhibiting one. See id. § 22.02. Here, Garrett
testified that Appellant was waving the gun in the air and had
"pulled" the gun on her. The fact that Appellant may not have directly
pointed the gun at Garrett did not raise an issue as to Appellant's innocence.
Appellant also claims that the portion of
the 911 tape in which Appellant denies having a gun provides a third piece of
evidence raising the issue of his innocence. Regardless of Appellant's denial,
testimony from Garrett, Harris, and Officer Kurz all show that Appellant had a
gun. We do not agree with Appellant's contention.
Appellant finally claims that the alleged
"threats" against Garrett may not have been threats at all and may not
actually have occurred because Garrett testified that Appellant's statements may
have been in reference to events taking place outside. Regardless of any
extraneous threats that Appellant may have been making as to alleged events
occurring outdoors, the evidence shows that Appellant directly threatened to
pistol-whip Garrett and that "he had no problem with hurting" her.
These were indeed direct threats made to Garrett that put her in imminent fear
of bodily harm. See id. § 22.01(a). Under the totality of the
circumstances, Garrett's testimony did not reasonably and fairly raise an issue
as to Appellant's innocence. See Griffin, 703 S.W.2d at 196.
We hold that the evidence establishes that
Appellant voluntarily and knowingly made his guilty plea, which is the specific
purpose of the sua sponte plea-withdrawal rule that Appellant asks us
to apply. See Steele, 22 S.W.3d at 555. Accordingly, the trial court
did not abuse its discretion by not sua sponte withdrawing Appellant's
guilty plea and replacing it with a plea of not guilty. We overrule Appellant's
first issue.
Issue Two
As to Appellant's second issue, because we
hold that the evidence did not reasonably and fairly raise an issue as to
Appellant's innocence, we find that the trial court did not err in instructing
the jury to find Appellant guilty of the offense. We overrule Appellant's second
issue.
We affirm the trial court's judgment.
 
DIXON W. HOLMAN
JUSTICE
 
PANEL B: HOLMAN, GARDNER, and WALKER, JJ.
PUBLISH
[DELIVERED JANUARY 23, 2003]

1. In his brief, Appellant says, "[T]he statement of
Appellant on the 911 tape that implied Appellant was waving a gun at [Garrett],
but never that [sic] he pointed it at her. (RR3:47)" At this page in the
record, we did not find a statement by Appellant that may have implied that he
was waving a gun at Garrett. The record reflects that Garrett made the only
statement regarding Appellant's possession of a gun. From the context of
Appellant's argument and from the other questions and answers on this page of
the record, we believe that Appellant intended to refer to Garrett's affirmative
statement that Appellant had a gun.