COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                       NOS.
2-08-427-CR

                                              2-08-428-CR

 

 

DEMETRIUS WARD                                                              APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 213TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                                                        MEMORANDUM OPINION[1]

 

                                              ------------

I. 
Introduction

Appellant
Demetrius Ward appeals his convictions on four counts of possession of a
controlled substance.  In one issue, Ward
contends that the trial court abused its discretion by failing to readmonish
him to determine whether his pleas of guilty were voluntary.  We affirm.








II. 
Factual and Procedural Background

In
January 2007, a grand jury indicted Ward on two separate counts for possession
of a controlled substance in the amount of four grams or more but less than two
hundred gramsCone count pertained to heroin
and the other to cocaine (ACause #1A).  In October 2007, a grand jury indicted Ward
on two more counts of possession of a controlled substance, namely cocaine, in
the amount of one gram or more but less than four gramsCthe
first count included Awith intent to deliver@ (ACause #2A).  Each count, in both causes, included a habitual
offender notice based on a 1998 felony conviction for possession of a
controlled substance and a 1990 felony conviction for unauthorized use of a
motor vehicle.

In July
2008, Ward entered an open plea of guilty to all four counts and signed preprinted
forms entitled AWritten Plea Admonishments.@  The admonishments informed Ward, among other
things, that as a habitual offender he faced a punishment range of life or
between twenty‑five and ninety‑nine years.  Contained within each admonishment form was a
section entitled AApplication for Community
Supervision.@ 
The section stated, AI swear
and it is my testimony here in open court that I have never before been
convicted of a felony offense in any court of the State of Texas or any other
state.@  Ward signed the applications after crossing
out the word Anever@ with a
pen.








In
addition to the plea admonishments, Ward signed a AWritten
Waiver of DefendantCJoined By Attorney,@ which
included the following statements:  (1) AI fully
understand each of the above written plea admonishments given by the Court and
I have no questions@; (2) AI am
aware of the consequences of my plea@; (3) AI am
mentally competent and my plea is knowingly, freely, and voluntarily entered@; and
(4) AI give
up and waive my right to a jury, both as to my guilt and assessment of my
punishment.@ 
Immediately below Ward=s
signature, his attorney signed the following statement:

I have fully reviewed and explained the above and
foregoing court admonishments, rights, and waivers, as well as the following
judicial confession to the Defendant.  I
am satisfied that the Defendant is legally competent and has intelligently,
knowingly, and voluntarily waived his rights and will enter a guilty plea
understanding the consequences thereof.

 

Finally,
Ward, his attorney, and the trial court all signed a statement that included
the following:  AThe
Court has given the Defendant the admonishments set out in paragraphs numbered
1 through 15, above.  In addition, the
Court finds that the Defendant is mentally competent and that his plea is
intelligently, freely and voluntarily entered.@

During
the plea hearing, the trial court verbally admonished Ward as to the range of
punishment for both causes.  For Cause
#1, the trial court stated:








In this indictment there is also a Habitual
Offender Notice which alleges that you have twice before been convicted of a
felony offense.  If the State is able to
prove the Habitual Offender Notice and if you were to plead guilty to the
offenses in Count 1 and Count 2, you would be faced with a term of not less
than 25 years to 99 years or life in prison. 
Do you understand that would be the range of punishment?

 

Ward responded,
AYes, sir@ to the
trial court=s admonishment.  For Cause #2, the trial court stated: 

And in [this] case there is also a Habitual Offender
Notice which alleges that you have been twice before convicted of a
felony.  Again, if you were to plead
guilty or be found guilty, the range of punishment upon proof of the
enhancement allegations would be not less than 25 years nor more than 99 years
or life in prison.  Do you understand
that to be the range in that case?

 

And again, Ward responded, AYes, sir.@  

 

Ultimately,
Ward pleaded guilty to all four counts and true to each habitual offender
notice.  Prior to the trial court
accepting Ward=s pleas of guilty and true, the
following conversation took place:

THE COURT:  Now, with respect to all the pleas you have
entered today,     pleading guilty as well
as true, did anybody force you to enter those         pleas?

 

THE
DEFENDANT:   No, sir.

THE COURT:  Are you pleading guilty to each indictment
and true to each     Habitual Offender
Notice because the allegations contained therein are      true and for no other reason?

 

THE
DEFENDANT:  Yes, sir.

THE
COURT:  Nobody forced you to do that?








THE
DEFENDANT:  No, sir.  

At the
close of the hearing, the trial court accepted Ward=s pleas,
granted his request for a presentence investigative report, and placed him in
custody to await punishment.  

During
the punishment hearing, the following exchange occurred between Ward and his
attorney:

[DEFENDANT]:  I loved the job. The pay was nice.  Everything about it was nice, my supervisor
was nice. Everything was not perfect, but everything was going well.  Everything was fine with me.

 

[DEFENSE COUNSEL]:  Now if the judge were to determine that
probation was something that he would consider, is thatB

 

THE
COURT:  He pled true to the habitual
notice.

[DEFENSE
COUNSEL]:  I understand Your Honor.

[DEFENSE COUNSEL]:  Is that something that you would ask the
Judge to consider in allowing you to go back to that job?

 

[DEFENDANT]:  Yes, sir, it is.  

[Emphasis
added.]  And, in Ward=s
closing remarks, he stated:

[DEFENDANT]:  . . . I just want you to know that if you
were to take into         consideration, give
me probation and not send me to prison, sir, it would      not be B you won=t regret it. 


 

[Emphasis
added.]  








Before
pronouncing Ward=s punishment, the trial court
informed Ward that, with his criminal history, Aplease
understand that probation is just not an option whatsoever.@[2]  The trial court then sentenced Ward to
thirty-five years= confinement on both counts in
Cause #1Cto run
concurrentlyCand to twenty-five years=
confinement on both counts in Cause #2Cto run
concurrently.  This appeal followed. 

III.  Admonishments

In his
sole issue, Ward asserts that the trial court abused its discretion by failing
to readmonish him to determine whether his guilty pleas were voluntary.  Specifically, Ward argues that the trial
court should have readmonished him to determine whether his guilty pleas were
voluntary when the trial court realized that his pleas were based, in part, on
a mistaken belief that he was eligible for community supervision.  

A.  Standard of Review








We apply
the abuse of discretion standard.  See
Montgomery v. State, 99 S.W.3d 257, 260 (Tex. App.CFort
Worth, pet. struck).  In determining
whether the trial court abused its discretion, we must uphold the trial court=s ruling
if it is reasonably supported by the record and is correct under any theory of
law applicable to the case.  Carrasco
v. State, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).  An abuse of discretion is shown only when the
trial court=s ruling lies outside the Azone of
reasonable disagreement.@ 
Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991)
(op. on reh=g).

B.  Guilty Plea

        Under
article 26.13 of the Texas Code of Criminal Procedure, the trial court must
admonish the defendant of the range of punishment before the court accepts a
plea of guilty.  Tex. Code Crim. Proc.
Ann. art. 26.13(a)(1) (Vernon Supp. 2009). 
The purpose of article 26.13 is to ensure that only constitutionally
valid pleas are entered by defendants and accepted by courts.  Meyers v. State, 623 S.W.2d 397, 402
(Tex. Crim. App. [Panel Op.] 1981); Lemmons v. State, 133 S.W.3d 751,
757 (Tex. App.CFort Worth 2004, pet. ref=d).  A constitutionally valid guilty plea must be
given knowingly and voluntarily.  Brady
v. United States, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469 (1970); Lemmons,
133 S.W.3d at 757.  The trial court=s
substantial compliance with article 26.13(a) is a prima facie showing that the
defendant=s guilty plea was entered
knowingly and voluntarily.  Tex. Code
Crim. Proc. Ann. art. 26.13(c); Martinez v. State, 981 S.W.2d 195, 197
(Tex. Crim. App. 1998); Lemmons, 133 S.W.3d at 757.  








A trial
court substantially complies with article 26.13 when it admonishes the
defendant of the appropriate range of punishment, the sentence given is within
the range prescribed by the law, and the defendant fails to affirmatively show
harm.  See Hughes v. State, 833
S.W.2d 137, 139B40 (Tex. Crim. App. 1992); Lemmons,
133 S.W.3d at 757.  Upon substantial
compliance by the trial court, the burden shifts to the defendant to
affirmatively show that he was unaware of the consequences of his plea and that
he was harmed by the admonishments.  Martinez,
981 S.W.2d at 197; Lemmons, 133 S.W.3d at 757.  If the defendant has stated that he
understands the nature of his plea and that it was voluntary, then he has a Aheavy
burden@ to
prove on appeal that his plea was involuntary. 
Arreola v. State, 207 S.W.3d 387, 391 (Tex. App.CHouston
[1st Dist.] 2006, no pet.); Acosta v. State, 160 S.W.3d 204, 211 (Tex.
App.CFort
Worth 2005, no pet.).     

A guilty
plea is not rendered involuntary merely because a defendant received a greater
punishment than anticipated or because he did not assess every relevant factor
when entering into his decision to plead guilty.  Lemmons, 133 S.W.3d at 757; Tovar‑Torres
v. State, 860 S.W.2d 176, 178 (Tex. App.CDallas
1993, no pet.).  Moreover, a voluntary
plea does not become Avulnerable to later attack if
the defendant did not correctly assess every relevant factor entering into his
decision.@ 
State v. Vasquez, 889 S.W.2d 588, 590 (Tex. App.CHouston
[14th Dist.] 1994, no pet.) (quoting Ex parte Evans, 690 S.W.2d 274, 277
(Tex. Crim. App. 1985)).








C.  Discussion

Ward
argues that, because he signed the applications for community supervision and
because he made statements during the punishment hearing pertaining to
community supervision, the trial court should have stopped the proceedings Ato
determine if [Ward=s] plea was based on an
erroneous belief that probation was an option.@  Ward acknowledges that a trial court is not
required to sua sponte withdraw a defendant=s guilty
plea but asserts the position that a trial court should be required to Atake a
pause in the proceedings to question a defendant@ in
order to determine if the defendant is fully aware of the consequences of his
plea.   

In
support of his argument, Ward directs our attention to Whitten v. State, in
which the Texas Court of Criminal Appeals explained that the rationale behind
admonishing the defendant on the range of punishment is to make sure that the
defendant enters his guilty plea with full knowledge of the consequences of
that plea.  587 S.W.2d 156, 158 (Tex.
Crim. App. [Panel Op.] 1979) (op. on reh=g), overruled
on other grounds by Cain v. State, 947 S.W.2d 262 (Tex. Crim. App. 1997)
(en banc).         








It is
well established that a trial court has no duty to admonish a defendant as to
his eligibility for community supervision unless the trial court has
volunteered an admonishment that included information on the availability of
community supervision or provided inaccurate information on the availability of
community supervision.  See Ex parte
Williams, 704 S.W.2d 773, 776B77 (Tex.
Crim. App. 1986); Downs v. State, 137 S.W.3d 837, 841 (Tex. App. Houston
[1st Dist.] 2004, pet. ref=d). Here,
Ward does not argue that the trial court provided inaccurate information as to
the availability of community supervision. 
Nor does Ward contend that he actually labored under a mistaken
impression.  Instead, Ward complains that
the line of questioning and arguments of his counsel revealed that his guilty
pleas were Aprobably@ not
entered with full knowledge of the consequences and imposed a duty on the trial
court to stop the proceedings, inquire into Ward=s
mistaken belief, and correct any misunderstandings. 








Ward,
however, cites no authority to support this proposition, and we have discovered
none.  Cf. Tabora v. State,
14 S.W.3d 332, 334B35 (Tex. App.CHouston
[14th Dist.] 2000, no pet.) (concluding that defendant=s plea
was voluntary even though defendant mistakenly believed he was eligible for
deferred adjudication community supervision and the misunderstanding was not
the result of the trial court=s
actions); Shepherd v. State, 673 S.W.2d 263, 269 (Tex. App.CHouston
[1st Dist.] 1984, no pet.) (concluding that the trial court did not have an
affirmative duty to admonish defendant on his ineligibility for community
supervision because the trial court did not mislead the defendant); see also
Houston v. State, 201 S.W.3d 212, 217B18 (Tex.
App.CHouston
[14th Dist.] 2006, no pet.) (noting lack of authority for duty of trial court
to sua  sponte withdraw a guilty plea when
defendant is mistaken in believing he was eligible for community
supervision).  

In the
absence of authority imposing such a duty on the trial court to correct an
apparent misunderstanding as to the eligibility of community supervision that
is the result of the defendant=s own
mistaken belief, we conclude that the trial court did not abuse its discretion
by failing to readmonish Ward.  Moreover,
the trial court did advise Ward at the punishment hearing that probation was
not an option, and Ward made no objection or attempt to withdraw his plea of
guilty at that time.[3]









The
trial judge literally complied with the statutory requirements of article
26.13(a), and Ward has not argued nor shown that he was misled or harmed by the
court=s
admonishments.  Tex. Code Crim.
Proc. Ann. art. 26.13(a),(c); see also Ex parte Williams, 704 S.W.2d at
776B77.  Accordingly, we overrule Ward=s sole
issue.

IV.  Conclusion

Having
overruled Ward=s sole issue, we affirm the
trial court=s judgments.

 

 

ANNE GARDNER

JUSTICE

 

PANEL: 
LIVINGSTON, DAUPHINOT, and GARDNER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: 
December 3, 2009











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Penal Code Ann. ' 12.42(d) (Vernon Supp.
2009) (declaring that, when a judge, rather than a jury, assesses punishment,
the judge may not place the defendant on community supervision if it is shown
that the defendant has two prior felony convictions).





[3]Ward does not argue that
he labored under any misconception that 
deferred adjudication community supervision, for which he was
technically eligible, was not a possibility under the circumstances.  See Tex. Code Crim. Proc. art. 42.12 ' 5(d)(1)(A) (listing
offenses for which deferred adjudication is excluded).  The trial judge, however, was not obligated
to place Ward on deferred adjudication community supervision simply because
that option was available.