COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| TRAVIS JEREMY RUTHERFORD A/K/A TRAVIS JEREMY TUTEN, | § | No. 08-23-00142-CR |
| | § | Appeal from the |
| Appellant, | § | 394th Judicial District Court |
| v. | § | |
| THE STATE OF TEXAS, | § | of Brewster County, Texas |
| | § | (TC# CR04891) |
| Appellee. | | |

## MEMORANDUM OPINION

Appellant Jeremy Rutherford entered an open guilty plea for the first-degree murder of Jeffrey Todd Williams and was sentenced to 55 years by the trial court. TEX. PEN. CODE ANN. §19.02(b)(2). In this appeal, his sole complaint is that the length of the sentence violates the rehabilitation objective of the Texas Penal Code. *Id.* § 1.02. Finding the trial court did not abuse its discretion, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant and Williams met through a friend and Appellant began purchasing methamphetamines from him. The two became friends and about six months later, Appellant moved in with Williams. As explained below, Appellant murdered Williams on March 23, 2021.

Appellant entered an open guilty plea to the murder charge but requested a lenient sentence from the trial court.

Before sentencing, the trial court took testimony from five witnesses: a neighbor who witnessed events on the day of the murder; the Chief of Police who investigated the crime; a special agent with the FBI who lived next door to Appellant; Appellant's father; and Appellant himself. From that testimony, and the more than 30 exhibits admitted at the hearing, we glean the following information was before the trial court when it passed sentence.

Appellant recounted years of struggles with mental illness and substance abuse. At age seven, he was sexually assaulted by an uncle. Shortly afterward, he began receiving treatment and medication for depression. But his mother did not ensure that he attended his appointments, and his mental health treatment was inconsistent. As a teenager, Appellant began to swing from suicidal depressive lows to manic highs. He began using drugs at the age of 16 to self-medicate. He attempted suicide six times, mostly before the age of 22. After one hospitalization, Appellant was stable for a period of about eight years. During this time, Appellant complied with his mental health treatment, remained on medication, maintained employment, and abstained from drugs other than marijuana. But around 2012 or 2013, after a divorce and a move, he resumed using illegal drugs. By 2014 or 2015, Appellant was using methamphetamines every day and was repeatedly discharged from a local mental health facility for failing to keep appointments.

In early 2021, Appellant began to hallucinate. He regularly heard voices that he believed were his children calling to him.[1] Twice people contacted law enforcement because of Appellant's strange behavior when he was having auditory hallucinations and was looking for his children– once at a golf course and once at a local school. Law enforcement spoke to him both times but

---

[1] He believed these hallucinations despite knowing that his children did not live in Texas.

2

brought him back to his house without taking further action. Along with the auditory hallucinations, Appellant also believed that he saw his son crossing the street by the high school.

Appellant moved in with Williams around the time of his onset of psychotic symptoms. His hallucinations continued and he became suspicious of Williams. Appellant believed that he saw his children's belongings in the house, and he accused Williams of having sex with his daughter. Appellant testified that the day before the murder he could hear his children under the house. He assumed that there must be as basement under the house and that Williams was keeping them there. He began to dig outside the house. The next morning, after smoking methamphetamines, he continued the search for his children. He went into the Williams' bedroom and shot at him with a bow and arrow, believing that was the only way Williams would tell him the truth.[2] Appellant testified that Williams reached under the bed for a gun. Appellant then hit him with a bat.[3] When Williams still did not give Appellant information about his children, Appellant shot him in the ankle with the bow and arrow. He testified that he did not intend to kill Williams, but only to disable him so that he could not interfere with Appellant's search. Appellant returned to his bedroom, digging a hole through the floor and about a foot of concrete under the house. By the time he returned to check on Williams, he had died.

Appellant was charged with the murder. He pled guilty and requested sentencing by the court. After extensive questioning by the trial court and Appellant's attorney, the trial court found that Appellant was aware of the possibility of the insanity defense and that he did not wish to pursue it. The trial court, relying on a court-ordered psychiatric evaluation, representations by

---

[2] He did not think at the time that he hit him with that first shot but concedes that it may have struck Williams' leg.

[3] Appellant testified that the bat hit Williams across the hands, but the physical evidence showed an unexplained injury to Williams' temple.

defense counsel, and its own observations, found Appellant to be competent and accepted his guilty plea.

Appellant testified that, while in jail, he had consistent mental health appointments and was taking his medication. He planned to join AA or NA, taking parenting classes, and pursuing technical training in a plumbing, electrical, or automotive field. He promised to continue treatment once released and had arranged for someone else to make mental health decisions if his hallucinations returned or he refused treatment.

At the end of the hearing, Appellant asked for a 30-year sentence and the State asked for a life sentence. The trial court sentenced Appellant to 55 years. He was 39 years old at the time of sentencing. Appellant did not object or file a motion for new trial.

## STANDARD OF REVIEW AND APPLICABLE LAW

The Texas Penal Code contains a list of objectives that its provisions are "intended, and shall be construed, to achieve . . . " TEX. PEN. CODE ANN. § 1.02. Among those objectives, and relevant to this appeal, are "insur[ing] the public safety through . . . the rehabilitation of those convicted of violations of this code" and "prescrib[ing] penalties that . . . permit recognition of differences in rehabilitation possibilities among individual offenders." *Id*. Appellant argues that his 55-year sentence for murder violates these statutory objectives.

A trial court's sentence is reviewed for abuse of discretion. *Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984) (en banc). A trial court abuses its discretion only if it acts "without reference to any guiding rules or principles." *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016). So long as a trial court's decision is within the "zone of reasonable disagreement," we must affirm no matter if we may have decided the matter differently. *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005); *Simpson*, 488 S.W.3d at 322.

ANALYSIS

## A.  Preservation of complaint

The State argues that Appellant has not preserved his complaint on appeal because he did not make a specific objection to his sentence. Texas Rule of Appellate Procedure 33.1 requires preservation of a complaint for appeal by "a timely request, objection, or motion." TEX. R. APP. P. 33.1(a)(1). Although Appellant did not object to the sentence assessed by the trial court, he did make a specific request for a lesser sentence (30 years). But for the request to preserve error under Rule 33.1, Appellant must have "stated the grounds for the ruling that [he] sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." *Id.* Appellant argues that the nature of his complaint was apparent from the context because his requests for "leniency" and his "desire to receive mental health and substance use treatment . . . put the trial court on notice that a lengthy prison term was objectionable."[4] We disagree.

Although Appellant testified that upon his release from prison, he intended to continue medication, seek help for addiction, and allow others to make mental health decisions, he did not give these as specific grounds for his request for a lower sentence. In closing, Appellant's attorney urged the court to sentence him to only 30 years:

> [Appellant] wants to take responsibility for what he did, but I believe that the history of his mental health is an important factor in what ended up happening that day . . . . [Appellant] is neither young or old at this point. And I believe that with a

---

[4] The cases cited by Appellant in support of his argument are inapposite. They all hold that an objection was not necessary to preserve an issue for appeal based on the nature of the error, and not because the objection was apparent from the context. *Montgomery v. State*, 99 S.W.3d 257, 259 (Tex. App.—Fort Worth 2003, pet. struck) (to ensure that pleas are voluntary, evidence of innocence requires a trial court to withdraw a plea of guilty even if no objection is made); *Edwards v. State*, 21 S.W.3d 625, 626 n. 1 (Tex. App.—Waco 2000, no pet.) (no objection is necessary to preserve complaint that the court entered a deadly weapon finding that was not found by the jury); *Garza v. State*, 841 S.W.2d 19, 23 (Tex. App.—Dallas 1992, no pet.) (objection to the State's restitution recommendation is not required to preserve error).

> 30 year sentence, he could become parole eligible under supervision, where other people who could watch his behavior could make those decisions. That if he was not doing well or not able to qualify for parole, that 30–in 30 years he would be old and still be able to have some engagement, some ability to heal some relationships. Some ability to have a relationship with children that might be able to be repaired during his incarceration and be able to come out, if appropriate.

Appellant's request for a lower sentence was based on the argument that his mental illness reduced his moral blameworthiness and that the safety of the public could be ensured because other people could monitor his behavior–not because he could be rehabilitated, or that § 1.02 of the Penal Code required the trial court to assess rehabilitation. His request and the reasons given for it were not sufficient to notify the court of a complaint that the sentence violated the rehabilitation objectives of the Penal Code. *Montelongo v. State*, No. 08-18-00094-CR, 2020 WL 4034979, at *4 (Tex. App.—El Paso July 17, 2020, pet. ref'd) (mem. op., not designated for publication) ("[W]e see nothing in this record that would have alerted the trial court to the Section 1.02 complaint [Appellant] raises here."); *Nieto v. State*, No. 11-20-00163-CR, 2022 WL 2252424, at *2 (Tex. App.—Eastland June 23, 2022, pet. ref'd) (mem. op., not designated for publication) (complaint that sentence violated rehabilitation objectives not preserved because, even though he requested a lesser sentence, "at no time did Appellant assert that the sentence imposed by the trial court violated Section 1.02").

Appellant alternatively argues that specific grounds for his request or objection were not required because the error was fundamental and not waivable. Some sentencing errors are fundamental. For example, in *Hernandez v. State*, cited by Appellant, the court held that a trial court's practice of doubling a repeat offender's prior sentence displayed judicial bias because the trial judge refused to consider the full range of punishment. *Hernandez v. State*, 268 S.W.3d 176, 184 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.). Because "the right to an impartial judge

is an absolute requirement," the defendant could complain about the sentence for the first time on appeal. *Id.* at 184; *see also Ex parte Brown*, 158 S.W.3d 449, 456–57 (Tex. Crim. App. 2005) (en banc) (granting habeas corpus because the court imposed the maximum sentence upon revocation of probation without considering the evidence). But the reasoning of *Hernandez* does not apply here. "[I]n the absence of a clear showing to the contrary, we will presume the trial judge was a neutral and detached officer." *Id.* at 182. Unlike *Hernandez*, nothing in the record shows that the trial court prejudged the sentence and refused to consider the evidence or the full range of punishment. *Jaenicke v. State*, 109 S.W.3d 793, 796–97 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (even though court considered jury verdicts in other cases, the presumption of impartiality was not rebutted because the record reflected that the court considered the evidence). Because the fundamental right to an impartial judge was not implicated and Appellant has not argued the violation of any other fundamental right, his complaint cannot be raised for the first time on appeal.

### B. Rehabilitation purposes of the penal code

Even if Appellant had preserved his complaint, our record does not show that the trial court abused its discretion. The general rule is that a sentence that falls within the statutory range of punishment is not an abuse of discretion. *Jackson v. State*, 680 S.W.2d at 814; *Foster v. State*, 525 S.W.3d 898, 911 (Tex. App.—Dallas 2017, pet. ref'd). "Subject only to a very limited, exceedingly rare, and somewhat amorphous Eighth Amendment gross-disproportionality review, a punishment that falls within the legislatively prescribed range, and that is based upon the sentencer's informed normative judgment, is unassailable on appeal." *Ex parte Chavez*, 213 S.W.3d 320, 323–24 (Tex. Crim. App. 2006), quoting *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003). The range of

punishment for first-degree murder is 5 to 99 years. TEX. PEN. CODE ANN. §§ 12.32(a); 19.02(d). Appellant's sentence of 55 years is within that range.

Nor does anything in our record show that the trial court did *not* consider the goals of rehabilitation when assessing punishment. *See Lambert v. State*, No. 03-17-00538-CR, 2018 WL 988778, at *3 (Tex. App.—Austin Feb. 21, 2018, no pet.) (mem. op., not designated for publication) ("nothing in the record before this Court indicates that the district court failed to consider the full range of punishment or failed to consider any potentially mitigating evidence when assessing its punishment"). As courts confronted with this same issue have recognized, "incarceration does not . . . mean [Appellant] will be denied the opportunity for rehabilitation." *Foster*, 525 S.W.3d at 911. Appellant acknowledged that while in jail, he is receiving mental health treatment, plans to join AA or NA, take parenting classes, and further his education in a technical field. *Nunnally v. State*, No. 03-19-00807-CR, 2021 WL 4995502, at *4 (Tex. App.—Austin Oct. 28, 2021, no pet.) (mem. op., not designated for publication) (the fact that defendant participated in services only once incarcerated was evidence that incarceration served a rehabilitative purpose).

Rehabilitation is also not the only objective of the Penal Code. TEX. PENAL CODE ANN. § 1.02 (stating the Code serves several objectives, including deterrence, rehabilitation, and preventing recidivism); *see also Ewing v. California*, 538 U.S. 11, 25 (2003) ("A sentence can have a variety of justifications, such as incapacitation, deterrence, retribution, or rehabilitation."). Given Appellant's extensive history of drug use and non-compliance with past mental health treatment, the trial court may have believed that a longer sentence was necessary to protect the public by deterring and preventing the recurrence of offenses. *See, e.g., Foster*, 525 S.W.3d at 911 (finding that incarceration served objective of preventing recurrence of criminal offenses based on evidence of the defendant's offense); *Nieto*, 2022 WL 2252424, at *3 ("Based on the crime charged

and Appellant's own admissions, we cannot say that   the sentence violates the objectives of the Penal Code to prevent the reoccurrence of criminal behavior to ensure the public safety."); *Nelson v. State*, No. 05-19-00290-CR, 2020 WL 1512488, at *2 (Tex. App.—Dallas Mar. 30, 2020, no pet.) (mem. op., not designated for publication) (considering the other punishment objectives of the Penal Code when finding that the trial court did not abuse its discretion).

Based on this record, we hold that a sentence of 55 years was not outside the zone of reasonable disagreement and that the court did not abuse its discretion.

## CONCLUSION

Appellant failed to preserve his complaint for appeal by making an objection or request for a lower sentence grounded specifically on the rehabilitation objectives of § 1.02 of the Penal Code. Even had such an objection been made, the record does not support that the trial court ignored those objectives or otherwise abused its discretion in imposing a 55-year sentence. The judgment below is affirmed.

JEFF ALLEY, Chief Justice

February 23, 2024

Before Alley, C.J., Palafox and Soto, JJ.

(Do Not Publish)